## JOHN LIVELAR COMPANY v. STATE.

[53 South. 681.]

1. CODE 1906, § 1749. *Liquors. Affidavit for search warrant.*

Under Code 1906, § 1749, providing for the issuance of a warrant for search and seizure of intoxicating liquors upon affidavit, the affidavit is insufficient to authorize the issuance of the search warrant unless it uses the words of the statute, or words of similar import.

2. SAME.

Laws authorizing searches and seizures must be strictly pursued.

APPEAL from the circuit court of Holmes county.

HON. J. M. CASHIN, Judge.

Proceeding by the state to seize and destroy intoxicating liquors in which John Livelar & Company were claimants. From a judgment for the state, claimants appeal.

The facts are fully stated in the opinion of the court.

*Tackett & Elmore,* for appellants.

The first error assigned is the overruling of the demurrer of appellants to the affidavit on which the search warrant was issued. If the demurrer had been sustained the search warrant would have been quashed and the liquors relieved from the levy.

Of the grounds set up in the demurrer, the following are relied on here:

1. The failure of the affidavit to allege that the whiskey was being kept for sale at the time referred to in said affidavit.

2. The failure of the affidavit to allege that affiant had reason to believe that said whiskey was being kept or offered for sale.

This proceeding is controlled by sections 1749, 1750 and 1751 of the Code of 1906. Said section 1749 was

amended by chapter 115 of the Laws of 1908, but in no material particular so far as this case is concerned. This proceeding was instituted on April the 18th, 1908, while chapter 115 did not take effect until December 31st, 1908.

The statutes provide for the issuance of a search warrant, upon an affidavit to certain matters, to an officer commanding him to enter the place designated, by breaking, if necessary, and search and seize the liquors described. No provision is made in the Code for notice to any persons. If one claiming the liquors learns of the proceeding he may make proper affidavit and have the question of the legality of their possession tried. If the trial shows that the liquor was kept for criminal purposes, section 1748 divests them of all property character and they are ordered to be destroyed. If no person claims them within the time to which the writ is returnable, not earlier than five days, the liquor shall be destroyed. A recent amendment to the above section provides for the giving of notice to said persons.

Our opinion is that the proceeding contemplated and invoked in this case is of strict right and must be pursued in strict compliance with the statutory terms. With regard to "Search and Seizure under Liquor Acts," the principle that a forfeiture of property can only be authorized when all the formalities of law are complied with in the search, seizure and forfeiture proceedings is generally recognized.

Though the proceedings under these statutes appear to assimilate more nearly to civil actions in form, they are in their nature criminal rather than civil. 25 Am. and Eng. Ency. Law, 1512.

Chief Justice Shaw in *Fisher* v. *McGirr* (Massachusetts), 61 Am. Dec. on page 395, refers to a proceeding of this kind as being "In a high degree penal in its operation and consequence."

"The process of search, seizure and forfeiture is sub-ject to strict construction, and to enforce forfeiture in forfeiture proceedings the most rigid compliance with the law is required." 35 Cyc. 1269, and citations in note 39.

"No search warrant can be lawfully issued except in the cases and with the formalities prescribed by law." 19 Enc. Pl. and Pr. 325.

In view of the above authorities, of the provisions of the three Code sections and of the analogies of the law, are we not warranted in insisting that a strict and formal compliance with the statutes must be had before a house can be broken into and property seized and before the claimant of the property can be called on to defend the same, if he desires to prevent its destruction?

In the present case, the terms of the statute were not even substantially complied with. The affidavit merely alleged that the whiskey "Is intended for sale by said McClurg in violation of the law." It does not allege that it was "being kept for sale," or that it was "being offered for sale" as the statute requires and as pointed out in the demurrer.

*Carl Fox,* assistant attorney-general, for appellee.

The appellants filed a demurrer to the affidavit, and the grounds of the demurrer relied upon in this court are:

First. The failure of the affidavit to allege that the whiskey was being kept for sale, at the time referred to in this affidavit.

Second. The failure of the affidavit to allege that affiant had reason to believe that said whiskey was being kept or offered for sale.

I can see no merit in the second ground, and shall not reply to appellant's argument thereon.

The affidavit, in short, is as follows:

" .......... J. P. Minyard ........... makes affidavit
on information and belief, that the whiskey in the depot
at West, in district No. 2, in Holmes county, Mississippi,
consigned to J. B. McClurg, on or about the 18th day
of April, 1908, is intended for sale by said McClurg, in
violation of law .......... " The language of the stat-
ute (section 1749) is "being kept or offered for sale."

Counsel for appellant complain of the refusal of the
court to grant instructions numbers 1 and 2, asked by
appellants (claimants below), being in substance, that
the state must prove that the liquors were being kept
for sale in violation of law." Instruction number 4
granted by the court for claimants, was that the jury
should find for the claimants, "unless they believed from
the evidence that the whiskey seized in this case was
being kept or intended for sale, or intended to be offered
for sale by J. B. McClurg, in violation of law at the
time of the seizure . . . ."

Another instruction was given by the court, presum-
ably for the state, that the jury should find for the plain-
tiff if they believed that the whiskey was "by the said
McClurg intended to be sold unlawfully."

It appears, therefore, that the same point is made as
to the instructions as is relied on in argument on demur-
rer, which is, that the instructions should have been that
the jury must believe from the evidence before it can
find for the state, that the liquor was being "kept for
sale in violation of law."

The liquor became the property of McClurg as soon
as he bought it from Livelar & Company on the 16th
or 17th of April, 1908, and he was in constructive pos-
session of it as soon as it was delivered to the railroad
company, and, of course, at the time it was seized. Mc-
Clurg himself did not appear in the case, either as a wit-
ness, or as a party, and there was no dispute about the
fact that it was his property and constructively in his
possession. That is, in one sense, it was being kept by

him at the time it was seized. The mere fact that it was still in the actual possession of his agent, the Illinois Central Railroad Company, does not alter the fact that in one sense of the word "kept" it was being kept by him.

In 23 Cyc. 175, under the title "Unlawful keeping for sale," it is said:

"It is not necessary that he should own the liquor in question; for he may keep it for unlawful sale, although it is the property of a third person; and he is equally guilty, although he does not intend that the unlawful sales shall be made by himself, but by his clerk or servant or some other person. The place of unlawful keeping must of course be within the jurisdiction, but the place of the intended sale is not generally material, except on the question whether it was within or without the state."

The unlawful intent to sell is the gist of the offense, and the place where the whiskey is kept, or whether he or some other person has the key to the room in which it is kept, or whether the building where the liquor is found, belongs to him or someone else, are wholly immaterial.

ANDERSON, J., delivered the opinion of the court.

This is a proceeding on the part of the state to seize and destroy certain intoxicating liquors, under sections 1749, 1750, and 1751, Code 1906. There was a claim interposed by the appellants for the liquors, and a trial, resulting in a judgment against them, from which they prosecute this appeal. The liquors in question were sold by appellants to J. B. McClurg, the latter giving them his check in payment therefor, and were shipped to McClurg at West, and found stored in the depot there, consigned to him.

The following affidavit was made for their seizure: "Before me, T. B. Hastings, mayor of West and *ex-officio*

a justice of the peace of district No. 2, J. P. Minyard, who makes affidavit on information and belief that the whisky in depot at West, in district No. 2, Holmes county, Miss., consigned to J. B. McClurg on or about the 18th day of April, 1908, is intended for sale by said McClurg in violation of law and against the peace and dignity of the state of Mississippi, return day being set for 13th day of May, 1908, against the peace and dignity of the state of Mississippi."

The check given by McClurg to appellants was by the former protested, and appellants thereupon, treating the sale as rescinded, made affidavit claiming the liquors, and also interposed a demurrer to the affidavit of seizure, on the ground that it charged no offense, which was overruled.

Section 1749, Code 1906, is as follows: "Upon the affidavit of any credible person that he has reason to believe and does believe that intoxicating liquors, as described in the three preceding sections, are being kept or offered for sale or barter, or sold or bartered, or that they are being kept to be given away, or are being given away to induce trade, in violation of law, in any room or building designated in the affidavit, it shall be the duty of any justice of the peace of the county in which the place is situated to issue a search warrant, directed to the sheriff or any constable of the county, or if in a municipality, to the sheriff, or any constable or marshal, or policeman therein, commanding him to enter the room or building designated by breaking, if necessary, and search for and seize such liquors, and all vessels or appliances used in connection therewith, and hold the same until disposed of according to law. The writ shall be returnable at a time to be stated therein not earlier than five days." Section 1750 provides that any person claiming to be the owner of the liquors seized shall have the right to make affidavit of his ownership, and traversing the grounds of the affidavit for seizure,

etc.; and section 1751, for the trial of the issue so made, the judgment to be rendered, etc.

Does the affidavit for seizure charge an offense under the statute? It charges that the liquors were "intended for sale by said McClurg in violation of law; while the language of the statute (section 1749) is, "are being kept or offered for sale or barter, or sold or bartered, or that they are being kept to be given away, or are being given away to induce trade." This statute is one of the remedies provided for the enforcement of the laws of this state against the unlawful sale of intoxicating liquors, and authorizes searches for, seizure, and the destruction, of such liquors "kept," etc., in violation of law, and, like all laws authorizing searches and seizures, must be strictly pursued. 25 Am. and Eng. Ency. Law (2d Ed.), 151, 152. An intention to sell falls short of a violation of the statute. The affidavit must charge the offense, either in the language of the statute or words of substantially the same import.

*Reversed and remanded.*