### Cofer *v.* State.*

(Division B. Nov. 5, 1928.)

[118 So. 613. No. 27146.]

762

*Corpus Juris-Cyc References: Criminal Law, 16CJ, section 1098, p. 567, n. 2; Searches and Seizures, 35Cyc, p. 1265, n. 6; p. 1267, n. 17; As to admissibility against defendant of document or articles taken from him, see annotation in 59 L. R. A. 465; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58; L. R. A. 1915B, 834; L. R. A. 1916E, 715; 8 R. C. L. 196; 2 R. C. L. Supp. 572; 5 R. C. L. Supp. 454; 6 R. C. L. Supp. 492.

*Stone & Stone,* and *Gore & Gore* and *A. A. Prague,* for appellant.

*James W. Cassedy, Jr.,* Assistant Attorney-General, for the state.

764

Argued orally by *W. I. Stone,* for appellant, and *James W. Cassedy, Jr.,* for the state.

PACK, J. Appellant appeals from a conviction and life sentence upon an indictment charging him with the murder of John Pruitt on the night of October 20, 1927. Deceased was called from his house at night by unknown persons and asked to come out to the roadside near by, where he was shot to his death. Four empty shotgun shells were found by the body, all being twelve-gauge buckshot shells.

The theory of the state seems to have been that the assassination was due to a conspiracy, formed by appellant and others, and that on the night in question appellant drove the death car, putting the co-conspirators out at the scene of the murder, and later picking them up. Aside from incriminating statements alleged to have been made by appellant, the testimony was largely circumstantial. An important link in the chain of circumstances introduced by the state was the introduction of four loaded buckshot shells, of the same kind as the empties found near the body.

Experts in the use of firearms testified that two of the empty shells were fired by a certain pump gun and two by a certain automatic. Both guns were exhibited to the jury, shown to belong to two of the alleged coconspirators, and seen in appellant's car the day of the killing. Sheriff Frost testified that, some weeks subsequent to the homicide, he procured a search warrant authorizing him to enter and search appellant's home for intoxicating liquors, "stored, kept, owned, controlled, or possessed for purposes of sale," etc., being authorized by section 2238, Hemingway's 1927 Code (Laws 1924, chapter 244). At the time of the search appellant was in jail under conviction of another crime, and there was no one present at his home when searched. Mr. Frost broke open the house, entered, broke open a trunk, and found therein two bottles partially filled with whisky, and also found the four loaded buckshot shells in question,

Timely objection was made to the testimony in reference to the seizure of the shells and their production before the jury, on the ground that they were procured by unlawful search of appellant's home. This objection was overruled, and constitutes the principal assignment of error. That testimony procured by entrance of the home without a valid search warrant is incompetent has been settled by this court in *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377; *Owens* v. *State,* 133 Miss. 753, 98 So. 233, and many cases following them, which will be found collated under section 2242, Hemingway's 1927 Code.

In both of these cases our court followed decisions of the United States supreme court cited in *Tucker's case, supra,* the United States supreme court holding that testimony so procured was a violation of the Fourth Amendment of the Federal Constitution, and to admit such testimony would be a violation of the Fifth Amendment. The Fourth Amendment reads:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

That part of the Fifth Amendment here pertinent reads:

". . . Nor shall be compelled, in any criminal case, to be a witness against himself."

We quote section 23 of our state Constitution:

"The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating

the place to be searched and the person or thing to be seized."

The applicable part of section 26 of our state Constitution reads:

"And he shall not be compelled to give evidence against himself."

The Fourth Amendment being identical in purpose and substance with section 23 of our Constitution of 1890, and the practical identity in language of the Fifth Amendment with section 26 of our Constitution, were the reasons given in Tucker's case for following the construction placed by the United States supreme court. In both the *Tucker* and *Owens cases, supra,* the officers were attempting to search homes without any warrants. while here the officers had a whisky search warrant, particularizing the premises to be searched, and the thing to be searched for, namely, *intoxicating liquors.*

Statutes authorizing searches and seizures must be strictly construed against the state. *Livelar v. State,* 98 Miss. 330, 53 So. 681; *Turner v. State,* 133 Miss. 738, 98 So. 240. In Turner's case, this court was called upon to construe the validity of a search warrant issued upon affidavit which omitted the words "does believe," the statute authorizing it providing that it should contain, among other things, "upon the affidavit of any credible person that he *has reason to believe* and *does believe,*" etc. (italics ours), a search warrant shall issue. It was held that the defect complained of was not formal, but substantial, and that the affidavit was void; hence the search and seizure was illegal.

In arriving at its conclusion in the Tucker and Owens cases, this court had before it, and followed, cases from the United States supreme court, of which *Boyd v. U. S.,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, *Weeks v. U. S.,* 232 U. S., 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and *Silverthorne Lbr. Co. v. U.*

S., 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, are out-standing examples. Since the decision of those cases we have *Marron* v. *U. S.,* decided by the United States' supreme court at the October term, 1927, reported in 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, which deals with the point now under consideration. Armed with a warrant for the search of this place of business, ''par-ticularly describing the things to be seized, intoxi-cating liquors and articles for their manufacture,'' pro-hibition agents entered the place of business of defend-ant, and, in their search, found large quantities of in-toxicating liquor, some of which was stored in a closet, and, while searching the closet, they found a ledger show-ing inventories of liquor and receipts; also beside the cash register they found bills against defendant for gas and electric lights, water, and telephone service fur-nished on the premises. The ledger and bills were seized, and introduced in evidence, over objections. The court said:

''It has long been settled that the Fifth Amendment protects every person against incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment. *Agnello* v. *United States,* 269 U. S. 20, 34, 46 S. Ct. 4, 70 L. Ed. 145, 149, 51 A. L. R. 409, and cases cited. The petitioner insists that because the ledger and bills were not described in the warrant, and as he was not arrested with them on his person, their seizure violated the Fourth Amendment. The United States contends that the seizure may be justified, either as an incident to the execution of the search warrant, or as an incident to the right of search arising from the arrest of Birdsall while in charge of the saloon. Both questions are presented. . . .

''1. The Fourth Amendment declares that the right to be secure against unreasonable searches shall not be vio-lated, and it further declares that 'no warrants shall

issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or *things* to be seized.' General searches have long been deemed to violate fundamental rights. It is plain that the amendment forbids them. In *Boyd* v. *United States*, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, Mr. Justice BRADLEY, writing for the court, said (page 624): 'In order to ascertain the nature of the proceedings intended by the Fourth Amendment to the Constitution under the terms "unreasonable searches and seizures," it is only necessary to recall the contemporary or then recent history of the controversies on the subject, both in this country and in England. The practice had obtained in the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods, which James Otis pronounced "the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book;" since they placed "the liberty of every man in the hands of every petty officer." ' And in *Weeks* v. *United States*, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B. 834, Ann. Cas. 1915C, 1177, Mr. Justice DAY, writing for the court, said (page 391): 'The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to

obtain conviction by means of unlawful seizures and enforced confessions . . . should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.'

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." The court held: "And it is clear that the seizure of the ledger and bills, in the case now under consideration, was not authorized by the warrant."

In *Reynolds* v. *State,* 136 Miss. 329, 101 So. 485, an officer, while searching the premises under an intoxicating liquor search warrant, found a whisky still in the residence and seized it. There was evidence of its use in manufacturing whisky. The court held that, since the officers were lawfully in the residence of defendant, and found contrabrand articles which the law prohibited having in his possession, it was not unlawful to seize them.

There is no law prohibiting the possession of shells. They were not contrabrand, as defined above. Section 23 of our Constitution prohibits the issuance of a search warrant for one's residence, unless such warrant be supported by affidavit "specially designating . . . the . . . thing to be seized." In *Tucker's case, supra,* Judge ANDERSON, speaking for the court, said:

"The securities afforded by our Constitution against unreasonable search and seizure, and self-incrimination, are not to be given a narrow construction. They are a part of our Bill of Rights. They stand along with the right of trial by jury. They are among the chief fundamentals of our system of government."

The able assistant attorney-general cites *Pringle's case*, 108 Miss. 802, 67 So. 455. This court reviewed and distinguished that case in *Owens* v. *State, supra*. Two differences were pointed out in the two cases. In Pringle's case, the incriminating evidence, a letter, was taken from the pocket of defendant while he was under arrest and in jail, and it did not appear that defendant objected to the search.

An officer, unlawfully making an arrest, may search the person for the purpose of disarming him and to prevent means of escape. As stated in the Tucker case, a number of states, perhaps a majority, hold that courts should not inquire into how evidence was obtained, in order to determine its competency. Our court, however, has aligned itself with the supreme court of the United States and a minority of the states, holding that testimony procured in violation of constitutional guaranty against unlawful search and seizure is incompetent, and that convictions upon such evidence will not be upheld.

Since possession of the shells was not unlawful *per se*, and since they were not specially designated in the warrant as the *thing* to be seized, we hold the seizure to be unlawful and in violation of section 23 of the state constitution. Their introduction in evidence was a violation of section 26, being tantamount to compelling appellant to give evidence against himself; for, as stated in Tucker's case:

"What is the difference in principle in forcing a defendant to speak against himself by word of mouth, and in forcing, by an unlawful search, the secret things of his home to give evidence against him? We see none. His home is as sacred from illegal force as his person."

In seizing that which was not particularly designated in the warrant, and that which was not unlawful to possess, the officer was acting as if he had no warrant.

There are other errors assigned, but, under the conclusion reached, it becomes unnecessary to discuss them. The cause is reversed and remanded.

*Reversed and remanded.*