220 So.2d 837 (1969)
Willie Mae ANTHONY
v.
STATE of Mississippi.
No. 45253.
Supreme Court of Mississippi.
March 17, 1969.
*838 James G. McIntyre, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., and Laurence Y. Mellen, Special Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice.
The appellant, Willie Mae Anthony, was indicted, tried and convicted of the murder of Levell McClinton. The jury returned a verdict in the following language: "We the Jury, find the defendant guilty as charged;" whereupon, the Court sentenced the defendant to serve a term of her natural life in the State Penitentiary.
The jury did not "fix the punishment at imprisonment in the penitentiary for the [natural] life of the convict" as required by section 2217, Mississippi Code 1942 Annotated (1956). The Court had, however, instructed the jury that in the event they convicted the defendant, the form of their verdict should be: "We, the Jury, find the Defendant guilty as charged, and fix her punishment in the penitentiary for life."
The primary facts surrounding the homicide apparently occurred in the following sequence. Velma Jean Smith (the sister of the appellant, Willie Mae Anthony) lived with Levell McClinton as his common law wife. On the afternoon of December 17, 1967, Levell McClinton and Velma Jean Smith were in Bell Street Cafe on Wood Street, in the City of Jackson. When Levell asked Velma to "come on, let's go home," and she replied, "okay, wait until I finish drinking my beer," he insisted that she go home and she continued to insist that he wait until she finished her beer. Levell then pushed her out of the door, knocked her down and kicked her. The testimony is conflicting as to whether or not Velma told her aunt to go get her sister to help her. For some reason Levell left the scene and went to the room of a friend nearby and got a shotgun. He came back with a gun, passed by Velma Jean (his common law wife), and she followed him to the house and opened the door with her key. Walter Lee Grant saw Levell go down the street with his shotgun, so he went in his car and got to the house while Levell was on the porch and took his shotgun away from Levell. He drove home to put up his gun, and as he returned he met Levell and saw that he was wounded, and took him to the hospital. In the meantime, Velma Jean Smith's aunt, Nannie Belle Smith, proceeded to the home of the defendant, Willie Mae Anthony, and informed her that Levell had beat her sister and had a gun to kill her with, whereupon, Willie Mae armed herself with a pistol and went to the home of Levell McClinton and her sister. When she reached the house several people had already gathered. The defendant entered the room where Levell and Velma Jean were. There is a conflict as to what happened then. The defendant contends that *839 Levell threatened her and started upon her with his hands behind him, and she "shot out" and ran home. Most of the witnesses, however, said she came in and asked what was happening and began to shoot at Levell. He ran into the back room and jumped through a window. There is testimony that just before the appellant arrived, Levell had a board and Velma Jean had a knife, but that they put them down before Willie Mae Anthony arrived. There is also testimony to the effect that the appellant and the deceased had had some previous difficulty, and that after the shooting, Willie Mae Anthony said: "That son of a bitch ain't dead, load my gun."
We are of the opinion that the facts in the instant case are conflicting and present a clear cut issue of murder or justifiable homicide. The jury has resolved the issue and we cannot say that their verdict was erroneous as to guilt of the defendant.
The appellant contends that the trial court committed reversible error in permitting the prosecution to introduce the revolver used by the defendant which was taken from her at the time she was arrested. This contention is based upon the objection the defendant made that: "This witness here has testified he didn't have a warrant for the arrest of the defendant, he hasn't testified that he had a search warrant, and I think that this evidence was obtained illegally."
The witness was a policeman of the City of Jackson, Mississippi. He had been informed that someone had been shot and was in the University Hospital. He went to the hospital and talked to Levell McClinton. The officer found that McClinton had been wounded with a small caliber gun in the right chest and was in a serious condition. The officer went to the house where the shooting was said to have occurred. He observed the bullet holes above the closet door, and the broken window. He talked to witnesses who were present at the time of the shooting. He then went to the home of the appellant and arrested her. The officer asked the defendant "where the pistol was," and he said, "she got it out of the drawer and handed it to me."
The issue raised, then, is: Did the officer have to have a warrant to arrest the appellant and did he have to have a search warrant to seize the pistol? If not, the pistol was used in an alleged crime and was admissible in evidence.
Mississippi Code 1942 Annotated section 2470 (1956) is as follows:
"An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit."
Did the officer have "reasonable grounds" to suspect and believe that the person proposed to be arrested committed the felony of shooting a human being without regard to the name of the crime designated under the statute?
This Court has often held that if an arrest is legal an officer may search a person arrested and the place where the arrest is made for weapon and evidence of crime. Cofer v. State, 152 Miss. 761, 118 So. 613 (1928); Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947); see also 4 Am.Jur. Arrest § 68 (1936); 5 Am.Jur.2d Arrest § 44 (1962); Annot., 82 A.L.R. 782, 784 (1933); Annot., 32 A.L.R. 681 (1924); Annot., 51 *840 A.L.R. 424, 431 (1927); Annot., 74 A.L.R. 1387, 1398 (1931).
The officer had the duty to make an arrest where there were reasonable grounds to believe that a crime had been committed, and there was "probable cause" to believe the person to be arrested committed the crime. Miss.Code 1942 Ann. §§ 2467, 2470, 4254 (1956).
In the much cited case of Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925), the Supreme Court of the United States had this to say on this subject:
"In Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035, a suit for damages for seizure by a collector, this Court defined probable cause as follows: `If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient. [citing cases]' It was laid down by Chief Justice Shaw, in Commonwealth v. Carey, 12 Cush. 246, 251 that: `If a constable or other peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful.'"
We cited the Carroll case, supra, in the case of Moore v. State, 138 Miss. 116, 103 So. 483 (1925), and in that case we said:
"It thus appears that the reasonableness of a search or seizure is not determined either at common law or under our statutes by the presence or absence of a warrant therefor. It is a judicial question to be determined by the court in each case, taking into consideration the place searched, the thing seized, the purpose for, and the circumstances under which the search or seizure was made, and the presence or absence of probable cause therefor."
In the case of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the Supreme Court of the United States held that where a narcotics agent acted upon reasonable information given to him by an informer and arrested the defendant, he acted upon probable cause and the arrest was legal. The narcotics and hypodermic syringe found in the possession of the defendant were admissible in evidence.
In the recent case, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the United States Court reversed the Court of Appeals for the Fourth Circuit and affirmed the holding of the United States District Court on Habeas Corpus in which that Court held that the evidence of the arrest of the defendant, the search of his home, and the seizure of guns and articles of clothing were admissible in the testimony. In that case the Court abolished the rule that a search could not be made for "mere evidence."
An officer can testify as to what information he had that prompted him to make an arrest, and may even give the names of the witnesses who gave him the information if the defendant wants this information. McNutt v. State, 143 Miss. 347, 108 So. 721 (1926).
This does not mean, however, that an officer can give detailed hearsay evidence in order to show probable cause, nor can he use statements of the deceased as to how the shooting occurred, unless, of course, such statements are admissible as dying declarations. In any case, however, the officer is not the final judge as to whether or not he had probable cause to make an arrest. The issue of "probable cause" is a judicial question to be determined by the judge. McNutt v. State, supra. Moreover, the judge's finding of probable cause is subject to review by this *841 Court. Ingram v. State, 146 Miss. 303, 111 So. 362 (1927).
In the case of Williams v. Clark, 236 Miss. 423, 110 So.2d 365 (1959), the operator of a pool room left his business for a short time and while he was gone someone took money from his "metal cash box." Clark, the owner, was informed that Williams had gone behind the counter and gotten something out of a box. He arrested Williams, and this Court held that Clark had reasonable ground to suspect and to believe that Williams had committed a felony and that he had a right as a private citizen to arrest Williams.
In the instant case we hold that the officer should have been permitted to testify as to the facts which caused him to make the arrest. We hold that he had probable cause for the arrest and that the pistol used in the shooting was properly introduced into evidence upon the trial.
The contention of the appellant that the trial court erred in failing to direct a verdict in favor of the defendant and that the judgment of the court was against the overwhelming weight of the evidence is not well taken, because the issue raised by the evidence was clearly a jury question. We are therefore of the opinion that the verdict of the jury and the judgment of the trial court finding the defendant guilty of murder should be affirmed.
There is, however, a serious legal question appearing on the face of the record which cannot be ignored, although it was not raised by defendant on appeal. We accordingly requested argument on the issue at the time the case was presented.
The jury in the instant case returned a verdict of guilt without fixing the punishment. The trial court had instructed the jury, apparently upon the proposition that the state did not seek the death penalty, that in the event the jury found the defendant guilty the form of the verdict should be: "We, the Jury, find the Defendant guilty as charged, and fix her punishment in the penitentiary for life."
Mississippi Code 1942 Annotated section 2217 (1956) is in the following language:
"Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment as provided by section 1293 [Code of 1930; § 2536, Code of 1942] in which case the court shall fix the punishment at imprisonment for life."
Although the jury returned a verdict that required the judge to sentence the defendant to death, the court sentenced the defendant to serve a term of her natural life in the state pentientiary. Since it may be true that the State waived the death penalty, and the defendant had no opportunity to question the jury as to capital punishment, we would not return the case to the trial court for proper sentence upon the verdict of the jury as has been done in other cases. However, the jury has a right to return a death penalty in murder cases, and when such verdict is returned the trial judge has no alternative except to sentence the prisoner as is required by the statute. John v. State, 191 Miss. 152, 2 So.2d 800 (1941); cf. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).
We have held that where a prisoner "pleads guilty" to the crime of murder, the trial judge may sentence the prisoner to serve a term of his natural life in the penitentiary. Bullock v. Harpole, Supt. of Miss. State Penitentiary, 233 Miss. 486, 102 So.2d 687 (1958). This rule is in accord with the holding in the great majority of the opinions, that the court may sentence a prisoner to suffer punishment for the lowest degree of the crime to which the prisoner pleaded guilty. 24 C.J.S. Criminal Law § 1563(2) (1961); see also Dickerson v. State, 202 Miss. 804, 32 So.2d 881 (1947). *842 The case now before the Court is not a case where the defendant "pleaded guilty" and was sentenced to life in the penitentiary, but we are confronted with a verdict of a jury, which carries the death penalty.
In the recent case of Rouse v. State, 222 So.2d 145, handed down by this Court on February 17, 1969, we followed the opinion of the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein that Court held that the conviction and punishment were separable, and in that case, under the circumstances there shown, we permitted the Court to enter a judgment sentencing the prisoner to serve a term of life in the state penitentiary. In the instant case, however, we are of the opinion that the sentence in the case should be reversed and that a new jury should be empaneled under proper instructions of the Court, to determine the punishment the prisoner should suffer. Of course, where a prisoner enters a plea of guilty the trial judge may follow the procedure outlined in Bullock v. Harpole, Superintendent of Mississippi State Penitentiary, 233 Miss. 486, 102 So.2d 687 (1958).
The judgment of the trial court finding the defendant guilty of murder is hereby affirmed, and the case is remanded to the trial court for the purpose of determining the punishment to which the prisoner shall be required to suffer.
The judgment of the trial court is affirmed as to the conviction of the appellant, Willie Mae Anthony, of murder. The judgment as to the sentence of the appellant is reversed and remanded to the trial court for further procedure in accordance with the foregoing opinion to determine the punishment of the appellant.
Affirmed as to conviction, reversed as to punishment, and remanded.
ETHRIDGE, C.J., and JONES, BRADY and INZER, JJ., concur.