517 So.2d 1317 (1987)
Carl Daniel LOCKETT
v.
STATE of Mississippi.
No. DP-64.
Supreme Court of Mississippi.
September 30, 1987.
Rehearing Denied January 13, 1988.
*1320 Clive A. Stafford Smith, Atlanta, Ga., for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, and Orbie Craft, Dist. Atty., Brandon, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:

I.
This capital murder appeal arises out of the murder of a Rankin County man as his wife watched, horrified. The Defendant, sentenced to die, has presented a great number of challenges to the legality of his conviction and sentence. We have considered these with great care, and, for the reasons set forth below, reject them all. We affirm.

II.
During the early morning hours of December 13, 1985, Lockett arose and, carrying a .32 caliber pistol and a .22 caliber rifle, walked through the woods to the home of Mr. and Mrs. John Calhoun in Rankin County. Longtime residents of the small Puckett community, the Calhouns lived with their two teenage sons a short distance from the home Lockett shared with his brother and sister.
Lockett crept up toward the back of the Calhoun house and waited until he saw John Calhoun and his two sons leave. He then walked to the carport and, believing that Calhoun would return soon, walked through the door into the house. On seeing Mrs. Calhoun seated watching television, Lockett grabbed her and forced her through the various rooms of the house, "looking for things."
Shortly thereafter Mr. Calhoun returned and drove his car into the driveway. Lockett hid behind the door and responded to Mrs. Calhoun's pleas for mercy with an order for her to "be quiet." As Mr. Calhoun walked through the front door, Lockett launched a volley of gunfire from the .32 pistol. Although Mr. Calhoun was struck by the first shot, Lockett fired 3-4 more times.
It was stipulated at trial that John Calhoun was killed, as his wife watched, by three .32 caliber gunshot wounds to the left chest, right chest and back. It was further stipulated that the bullets came from a gun matching the type seized in a later search of Lockett's bedroom.
*1321 Despite Mrs. Calhoun's pleas that he go ahead and kill her at the house rather than force her to leave with him, Lockett forced her to remove her dead husband's wallet, grabbed her and marched her to her car. He took the credit cards from John Calhoun's wallet and drove Mrs. Calhoun to a nearby abandoned egg house owned by Lockett's grandmother. Mrs. Calhoun was executed by Lockett's two rifle shots to her head.[1] The defense stipulated that Mrs. Calhoun's wounds were inflicted by a .22 caliber rifle of the type removed from the defendant's bedroom during the later search. Thereafter, Lockett stripped the Calhouns' car, hid the car parts in the egg house, and walked back through the woods to his house. Once there, he hid the guns and credit cards and went to sleep.
John Calhoun's body was found by his brother within an hour or two of the killing. An intensive investigation followed involving bloodhounds. Later that same day, officers found Mrs. Calhoun's body, the stashed car parts, and the abandoned car. Officers also recovered from the egg house a spiral composition book bearing the name of Carl Lockett. Further development of leads led authorities to obtain a warrant and search Lockett's room, a search which uncovered both murder weapons (which had been stolen in earlier community burglaries), John Calhoun's credit cards and a blank check bearing the Calhoun name.
Thereafter, Lockett was taken into custody. After waiving his rights at the Rankin County Sheriff's office, Lockett confessed. Subsequently, another waiver was made and Lockett tendered a complete tape-recorded account of the crime.
Lockett was indicted in the Circuit Court of Rankin County for the murder of John Calhoun. Following a change of venue, he was tried in Circuit Court in Pascagoula, Mississippi. On April 2, 1986, a jury convicted Lockett of the capital murder of John Calhoun and sentenced him to death. Lockett filed the usual post-trial motions, which were all denied. Lockett appeals assigning the following errors:
(1) The admission of evidence seized pursuant to an invalid warrant that was issued by a partial magistrate and was never served upon the occupant of the house searched, and pursuant to a warrantless arrest within his house, violated Lockett's rights under the Fourth Amendment.
(2) The confessions introduced against Lockett at trial were both involuntary and the fruit of the illegal search, seizure and arrest.
(3) When Lockett was brought into the courtroom before the jury in shackles, he was denied his right to due process.
(3A) The introduction throughout both phases of Lockett's trial of evidence and argument concerning a distinct crime of murder, and other crimes, deprived Lockett of his rights under the constitutions of this state and of the United States.
(4) The State's abuse of its peremptory challenges to exclude all the blacks from Lockett's jury deprived him of his right to a representative jury and to due process of law.
(5) The impartiality of the venire selected to try Lockett was reasonably questioned when it became apparent that there were many close associates of law enforcement on it.
(6) The charge of capital murder was unacceptably duplicitous, a fault uncured by the jury verdict.
(7) The submission to the jury of the aggravating circumstance alleging the commission of a murder in the course of a burglary, robbery and/or a kidnapping denied Lockett his constitutional rights.
(7A) The trial court erred in submitting to the jury the aggravating circumstance of a murder committed while under sentence of imprisonment.
(8) The submission of the aggravating circumstance of heinous, atrocious and cruel denied Lockett his rights under the constitutions *1322 of this state and the United States.
(9) The submission of the aggravating circumstance of pecuniary gain constituted double jeopardy, and failed meaningfully to narrow the class of persons eligible for the death sentence.
(10) The instructions at the penalty phase deprived Lockett of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Mississippi law.
(11) The prosecution committed misconduct that rendered Lockett's trial fundamentally unfair.
(13) The excusal of venireperson Crear without the showing of predisposition against the death penalty required in Fuselier v. State cannot be squared with Lockett's constitutional rights.
(14) The imposition of the death penalty upon a person who does not intend to commit murder violates the Eighth Amendment to the United States Constitution.
(15) The death sentence imposed upon Lockett is disproportionate and was the consequence of emotion and caprice.

GUILT PHASE

III.

THE ADMISSION OF EVIDENCE SEIZED PURSUANT TO AN INVALID SEARCH WARRANT THAT WAS ISSUED BY A PARTIAL MAGISTRATE AND WAS NEVER SERVED UPON THE OCCUPANT OF THE HOUSE SEARCHED, AND PURSUANT TO A WARRANTLESS ARREST WITHIN HIS HOUSE, VIOLATED LOCKETT'S RIGHTS UNDER THE FOURTH AMENDMENT.
Lockett first challenges the legality of the search warrant through which evidence was obtained and used against him. On the day following the incident, Officers Craft and McCrory and Investigator Burnham went to the Lockett home. When they arrived, Yancey Lockett, Carl's brother, refused to let them search the home. Officer McCrory then called Justice Court Judge Billy Ray Brown and asked him to come to the scene and give them a search warrant.[2] When Judge Brown arrived at the scene, he swore in the officers and they supplied him with a written affidavit and oral statements to establish probable cause. Based on this information, Judge Brown issued a search warrant for the Lockett home.
Lockett challenges the legality of the warrant on several grounds, the first two being lack of a neutral and detached issuing magistrate and lack of probable cause. Additionally, Lockett argues the warrant was deficient in several material respects, including the scope of the search and formal service of the warrant. Each of Lockett's challenges will be addressed separately along with the pertinent facts.

A. Neutral and Detached Magistrate

Lockett challenges Justice Court Judge Brown's role as a neutral and detached magistrate, alleging that the judge participated in the investigation of the crime so as to be nothing more than a mere "rubber stamp" for the police. See McCommon v. State, 467 So.2d 940, 942 (Miss. 1985), cert. den., 474 U.S. 984, 106 S.Ct. 393, 88 L.Ed.2d 345 (1985). Specifically, Lockett contends that Judge Brown remained on the scene for a long period, took Yancey in handcuffs to find Carl, appeared on television when he returned to the scene, and finally delivered Yancey to jail, driving in the convoy of law enforcement officers. Lockett contends that the aggregate effect of these actions made a biased issuing magistrate.
The State contends that these facts bear out that Judge Brown acted in a neutral and detached capacity.[3] Acknowledging *1323 that Brown met the officers at the scene, the state submits that the mere presence of the judge at Lockett's home does not per se taint issuance of a warrant. See Rains v. State, 161 Ga. App. 361, 288 S.E.2d 626, 628 (1982); U.S. v. Duncan, 420 F.2d 328 (5th Cir.1970). Further, the State argues that Brown's activities after issuing the warrant on the scene did not destroy his neutral capacity. Specifically, the State points to Judge Brown's testimony where he testified that after issuing the warrant, he backed his car away from the house and never entered the house nor observed any items recovered from the search. He did not conduct a formal inventory of the seized items until two days later. Brown also testified that while he sat in his car, Yancey asked if he could sit in the car with him. Brown then testified that once Yancey was in the car, Yancey told the judge he knew where Carl was. They drove to where Yancey had indicated, but failed to find Carl. Thereafter, Brown drove Yancey to the Sheriff's office and went home.
Under both federal and state constitutional guidelines, a central requirement for a valid search warrant is that it must be issued by a neutral and detached magistrate. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920, 928 (1979); Shadwick v. City of Tampa, 407 U.S. 345, 350, 92 S.Ct. 2119, 2123, 32 L.Ed.2d 783, 788 (1972); Coolidge v. New Hampshire, 403 U.S. 443, 449, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564, 573 (1971); Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948); Annot., Requirement, Under Federal Constitution, That Person Issuing Warrant For Arrest Or Search Be Neutral and Detached Magistrate  Supreme Court Cases, 32 L.Ed.2d 970 (1973 and Supp. 1986); McCommon v. State, 467 So.2d 940, 942 (Miss. 1985); Birchfield v. State, 412 So.2d 1181, 1183 (Miss. 1982). Certainly substantial involvement in the search is forbidden. See Lo-Ji, 442 U.S. at 328, 99 S.Ct. at 2325, 60 L.Ed.2d at 929-30; Thomason v. State, 148 Ga. App. 513, 251 S.E.2d 598, 599 (1978). However, a magistrate who goes to the scene, issues a warrant and remains there for some time does not abdicate his proper position. Pressel v. State, 163 Ga. App. 188, 292 S.E.2d 553, 556 (1982); see also Rains, 288 S.E.2d at 628; LaFave Search and Seizure § 4.2(d) (2d ed. 1987).
The role of a justice court judge issuing a search warrant was addressed by a majority of this Court and expounded upon by three Justices in a concurrence in McCommon v. State, 467 So.2d 940, 942-45 (Miss. 1985). The import of both of these opinions is that a justice court judge be just that  a judge. He should always be impartial, and not favor either law enforcement officials or the accused. The determining factor, then, is the magistrate's degree of involvement in the actual search. Here, nothing in the record indicates Judge Brown acted in a biased manner when he actually issued the search warrant. Instead, the record bears out the trial judge's determination that "Judge Brown was an objective, independent and detached magistrate throughout these proceedings," rendering the warrant only after "examining the affidavit, attached sheet, and hearing the oral testimony of the officers... ." Therefore, this Court rejects Lockett's argument.

B. Bias Due To Pecuniary Gain

Lockett also contends that since Judge Brown receives ten dollars for each affidavit he signs, and this amount is paid to the fund from which his salary is paid, his wealth is dependent upon how many affidavits he signs.
The state correctly points out that Miss. Code Ann. § 25-3-36 (Supp. 1986) sets a fixed salary for each Justice Court Judge. Moreover, Miss. Code Ann. § 25-7-25 (Supp. 1986) does not provide any collectible *1324 fee for the issuance of search warrants. Lockett's argument is without merit.

C. Probable Cause

Lockett next challenges the warrant alleging that it lacks probable cause. Lockett's contention is simply that Judge Brown lacked sufficient facts to establish probable cause to issue the search warrant. Lockett emphasizes that according to Judge Brown's testimony, the written affidavit was the sole basis for issuing the warrant.
The state argues that the written affidavit coupled with the oral testimony by the officers was sufficient to establish a reasonable belief that a crime had been committed.
In Lee v. State, 435 So.2d 674, 676 (Miss. 1983) this Court adopted the "totality of the circumstances" test for determining whether probable cause exists to issue a search warrant. This test was formulated by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) as follows:
The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
This Court has continually adhered to this standard since its adoption in Lee.[4]
This Court's standard of review is to determine whether there was a substantial basis for the magistrate's determination of probable cause. Massachusetts v. Upton, 476 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Harper v. State, 485 So.2d 1064 (Miss. 1986). In so doing, we point out that written affidavits may be supplemented with sworn oral testimony of officers to establish probable cause. Hester v. State, 463 So.2d 1087, 1089 (Miss. 1985); Lee v. State, 435 So.2d 674, 677 (Miss. 1983); Read v. State, 430 So.2d 832, 834-35 (Miss. 1983); Wilborn v. State, 394 So.2d 1355, 1357 (Miss. 1981); Prueitt v. State, 261 So.2d 119, 123 (Miss. 1972); see also Stringer v. State, 491 So.2d 837, 845 (Miss. 1986) (Robertson, J., concurring); Accord Drane v. State, 493 So.2d 294, 299 (Miss. 1986).
Here, Judge Brown testified that after swearing in the officers, he based his probable cause determination on the written affidavit. Officers Craft and McCrory and Investigator Burnham testified that they were sworn in by Judge Brown, and that they provided him with oral statements in addition to the written affidavit to establish probable cause. The written affidavit read as follows:
I Ernest Burnham, Cecil McCrory and Hulon Craft respectfully request that a search warrant be issued to us on the following information. On 12-13-85 two murders were committed. Also an automobile belonging to the victims was stolen. The vehicle was recovered the same day but had been stripped of the radio, sun visors, speakers, jack, cassette tapes and maybe other items.
The following day, 12-14-85, these items were found in an old abandoned egg house. Also in the house, papers and books were found with people's names and addresses on them. One of the names on a book was Carl D. Lockett. We decided these people should be talked to. Hulon Craft knew Carl Lockett and took Sheriff Lloyd Jones to Lockett's home to talk to him and to see if the subject would give us permission to search the premises for two guns that could have been used in the killing, and find out why his belongings were in the egg house.

*1325 Upon arrival, Carl was not at home and his brother Yancey Lockett would not give permission to search the residence. Yancey said that he only occupied one room of the house and could not give permission to search.
Myself and Deputy Cecil McCrory went to the Lockett residence. I talked to Yancey and he advised me of the same thing that he told Sheriff Jones and Hulon Craft. Meanwhile I had told Cecil McCrory to radio the Sheriff's office and get Judge Bill Ray Brown to come down, that we would need a search warrant.
After about 25 minutes Judge Brown arrived.
To get to the Lockett residence from Puckett, Mississippi, go north on Highway 18 a short distance and turn right on Warren Hill Road. Then go on up road to a white frame church building and turn left on Warren Hill Place. Then go .8 of a mile to brown and yellow frame house on right. The address is 194 Warren Hill Place, Brandon.
12-14-85

Ernest Burnham
Additionally, Burnham gave Judge Brown oral statements consisting of facts known by him, Craft and McCrory which led them further to believe that they had probable cause to obtain a warrant to search Carl's home. These facts consisted of:
1. Matching footprints found at the scene where the car was found, near Lockett's home, and behind the Calhouns' home.
2. Bloodhounds searching the egg house where items from the Calhouns' car was found led in the direction of Carl's home.
3. Confidential information about burglaries in the area linked to Carl.
4. Guns of the type used in the murder of the Calhouns had been stolen in several house burglaries in the area.
5. Carl's past record (Texas conviction and use of marijuana).
6. Egg house in which items from Calhoun's car were found was owned by Carl's grandmother.
7. Mrs. Calhoun's body was found in a chicken house owned by Carl's grandmother, which was located near both the Calhoun and Lockett homes.
We hold that the affidavit and the facts established a "substantial basis" for Judge Brown's determination that probable cause existed. We find Lockett's argument without merit.

D. Scope Of The Search Warrant

Lockett next contends that the searching officers went beyond the scope of the warrant when they searched for additional evidence after finding the guns in his bedroom. Specifically, Lockett argues that the officers found the guns early in the search and then "rummaged about" for further evidence. Lockett points to the discovery of credit cards found behind a wall plaque, contending that it was unreasonable to believe that guns could be found in such a place.
The State first contends that Lockett waived his right to argue this claim on appeal because he failed to raise it at trial. Further, the State argues that there is no evidence, contrary to Lockett's contention, that the guns were found early in the search, and that the officers had no way of knowing how many guns Lockett had in his possession. Therefore, the right to search was not extinguished by discovery of the two guns. The question then becomes whether or not the items outside the description of the warrant were seized during the course of a lawful search. Garland v. Maggio, 717 F.2d 199 (5th Cir.1983) stands for the proposition that where an officer possesses a warrant to search for specified objects and during that search comes across other incriminating articles, those articles are seizable despite their absence from the warrant. Further, "property which has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items." Id. at 206, United States v. Kane, 450 F.2d 77, 85 (5th Cir.1971).
The search warrant described the items sought as

*1326 the guns that was [sic] used in the murder of Mr. and Mrs. John Calhoun.
Early in our criminal jurisprudence, we required strict adherence to the constitutional principle that a search warrant must specifically designate the place to be searched and the person or thing to be seized. Miss. Const. Art. III, § 23 (1890); Fatimo v. State, 134 Miss. 175, 98 So. 537 (1924); Cofer v. State, 152 Miss. 761, 118 So. 613 (1928). However, the long-standing exception to this general rule is that if the searching officers are lawfully on the premises with a valid search warrant, and they find contraband in plain view, then seizure of the contraband is lawful. Hall v. State, 455 So.2d 1303, 1307 (Miss. 1984); Isaacks v. State, 350 So.2d 1340, 1344 (Miss. 1977); Prueitt v. State, 261 So.2d 119, 124-25 (Miss. 1972); Williams v. State, 216 Miss. 158, 168, 61 So.2d 793, 797 (1953); Cofer, 152 Miss. at 770, 118 So. at 615; see also Caldwell v. State, 194 So.2d 878, 881 (Miss. 1967) (incriminating box found in plain view outside trailer pursuant to specific provision in warrant authorizing seizure of contraband in addition to property described was lawfully seizable); Reynolds v. State, 136 Miss. 329, 345, 101 So. 485, 487 (1924) (officers who were legally in residence pursuant to warrant authorizing search for intoxicating liquors and saw still, could legally seize still). Indeed, the Cofer Court recognized this exception. See Cofer, 152 Miss. at 770, 118 So. at 615.
In two cases, this Court has gone beyond the aforementioned exception, holding that where officers are lawfully on the premises, "articles of evidence connected with another offense are subject to seizure although not described in the search warrant." Salisbury v. State, 293 So.2d 434, 437 (Miss. 1974); Gann v. State, 234 So.2d 627, 628-29 (Miss. 1970). Finally, in interpreting Section 23, this Court has held "descriptions in a search warrant need not be positively specific and definite, but are sufficient if the places and things to be searched are designated in such a manner that the officer making the search may locate them with reasonable certainty." Cole v. State, 237 So.2d 443, 445 (Miss. 1970).
The identical specificity requirement for search warrants in Miss. Const. § 23 is found in the Fourth Amendment to our Federal Constitution. See Maryland v. Garrison, 480 U.S. ___, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987); U.S. Const. Amend. IV. However, strict application of the specificity requirement in the Federal Constitution has been softened by the plain view exception recognized by the United States Supreme Court. See Texas v. Brown, 460 U.S. 730, 736-37, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510 (1983) (plurality); Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2937, 29 L.Ed.2d 564, 582 (1971) (plurality); Annot., Validity of Seizure Under Fourth Amendment "Plain View" Doctrine  Supreme Court Cases, 75 L.Ed.2d 1018 (1985). In addition to the plain view exception, "property which has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items." Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983); United States v. Kane, 450 F.2d 77, 85 (5th Cir.1971); United States v. Gentry, 642 F.2d 385, 387 (10th Cir.1981).
The search warrant in the instant case provided that searching officers were to search for "guns ... used in the murder of Mr. and Mrs. John Calhoun." But, if the officers were lawfully on the premises, which they were, then any contraband found in plain view could lawfully be seized. In the course of searching for the guns the officers were entitled to make reasonable inspection of places where the guns may have been hidden. A wall plaque may well conceal a space within a wall where such items may be hidden.
We hold that the officers were lawfully on the premises, that they had the authority to take such reasonable actions as looking behind a wall plaque, and that the credit cards were lawfully seized.

E. Was The Warrant Served On Yancey?

Lockett next urges that Yancey was never served with the warrant for the *1327 guns. Instead, he argues that Yancey was served with a warrant for marijuana. Lockett points to Yancey's testimony to establish this claim. Yancey testified that he received the marijuana warrant, not the gun warrant. Lockett also points to the fact that defense counsel had never seen the gun warrant prior to trial as evidence that the marijuana warrant had been the only one issued to Yancey. Finally, Lockett argues that the trial court was even uncertain whether the correct warrant had been issued.
The state simply points to the return on the gun warrant as solid evidence that the warrant was issued to Yancey. Further, the state argues that even if the correct warrant was not served on Yancey, that fact alone would not invalidate the search.
When Judge Brown arrived on the scene, he gave Officer Craft a warrant for marijuana. Officer Craft indicated to Judge Brown that he needed a warrant for stolen goods, not marijuana, and gave the marijuana warrant back to Brown. Brown then issued a warrant for stolen property (guns). Judge Brown testified that he issued the gun warrant to the officers. Indeed, the return on the gun warrant clearly indicates the warrant was served on Yancey. The officers testified that they served the warrant on Yancey as well. As indicated by the trial judge
... the testimony of the officers and Officer Craft's return establishes that the warrant was properly served prior to its execution.
The return coupled with the officers' testimony refutes Yancey's testimony that he was served with the marijuana warrant instead of the gun warrant. Indeed, this is a matter of conflicting testimony, coupled with clear documentary evidence, and it does not appear that the trial judge's holding based on such evidence was manifestly wrong.

F. Was Warrantless Arrest In House Illegal?

Lockett contends that the officers should have obtained a warrant for his arrest before arresting him in his home. In support of this proposition, he cites Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), contending the Supreme Court held that in the absence of exigent circumstances the authority to make a warrantless arrest dissolves on the threshold of the home.
The state argues that Payton forbids the warrantless Gentry into a suspect's home for the purpose of effecting an arrest as opposed to the warrantless arrest of the suspect. Further, the state cites Hanner v. State, 465 So.2d 306 (Miss. 1985) for the proposition that an officer may make an arrest for a felony on probable cause based on a two prong determination that (1) a felony has been committed and (2) there is reason to believe the person named in the warrant or suspected by the officer committed the felony.
Miss.Unif.Crim.R.Cir.Ct.Prac. 1.02 provides guidelines for warrantless arrests. The rule provides, in pertinent part, that
An officer may arrest any person without a warrant under the following circumstances: ... (3) When the officer has reasonable grounds to believe a felony has been committed and the person proposed to be arrested committed it.
Miss.Unif.Crim.R.Cir.Ct.Prac. 1.02. Recently in Jones v. State, 481 So.2d 798, 800-01 (Miss. 1985), this Court applied Rule 1.02 and noted that Mississippi case law supported the rule. See Jones, 481 So.2d at 800 (cases cited therein). Further, the Court cited Swanier v. State, 473 So.2d 180 (Miss. 1985) as recognizing the appropriate inquiry for determining whether officers have reasonable grounds or probable cause justifying a warrantless arrest:
The existence of "probable cause" or "reasonable grounds" justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case.
Swanier, 473 So.2d at 186, quoting Smith v. State, 386 So.2d 1117, 1119 (Miss. 1980).
*1328 Carl Lockett was arrested for house burglary upon the seizure from his room of two guns, the serial numbers of which matched two weapons reported stolen from homes nearby. Here, the officers, pursuant to the search warrant we have above held lawful, went into Lockett's home and discovered highly incriminating evidence which supplied them with probable cause to arrest him. We hold that the arrest of Carl Lockett at his home was supported by probable cause.

IV.

THE CONFESSIONS INTRODUCED AGAINST LOCKETT AT TRIAL WERE BOTH INVOLUNTARY AND THE FRUIT OF THE ILLEGAL SEARCH, SEIZURE AND ARREST.
Lockett begins by challenging the confession introduced against him as violative of the Agee rule because all of the officers present when the confession was made did not testify at trial.
In Agee v. State, 185 So.2d 671, 673 (Miss. 1966) this Court set forth the procedure that a trial court should follow in determining the voluntariness of a confession:
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959). When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury. Lee v. State, supra, is also authority for the proposition that when, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. See also Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
Here, at the hearing on the motion to suppress all oral and written confessions, the state put on Judge Brown, Officers Craft and McCrory and Investigator Burnham who all testified that the statements Carl gave were voluntary, not the result of coercion or pressure. Thereafter, Carl took the stand and also testified that the officers did not pressure him. The only testimony offered by Carl that could be inferred as coercion was that he was high on the day of his arrest and when he made the statements. Carl never alleged that the officers coerced him into making any statements. Specifically, the taped confession introduced at trial was obtained December 15, 1985, at the Rankin County Sheriff's office. Officer McCrory, Investigator Burnham and Lockett were the only parties present. McCrory and Burnham testified that they did not coerce Lockett into making the statement and he appeared to know what he was doing. Further, Lockett signed a waiver of rights before making the confession.
"[C]oercive police activity is a necessary predicate to the finding that a confession is not `voluntary' within the meaning of the Due Process of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. ___, ___, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986). Here, Carl never alleged coercive police activity. However, even if he had, he presented no evidence of `violence, threats of violence, or offers of reward [that] induced the confession' to rebut the State's prima facie case of voluntariness. See Tolbert v. State, 511 So.2d 1368, 1376 (Miss. 1987); Hemmingway v. State, 483 So.2d 1335, 1337 (Miss. 1986). Further, the trial court's finding regarding admission of a confession is considered a finding of fact which will not be reversed unless manifestly wrong. Frost v. State, 483 So.2d 1345, 1350 (Miss. 1986). The *1329 record reflects that Lockett's statements were made over the course of several days with each statement occurring after a valid, written waiver. There was no causal connection between a primary illegality and a confession which appears in its wake. See Hall v. State, 427 So.2d 957, 960 (Miss. 1983). The trial court's determination to admit Lockett's confession is supported by substantial evidence and we will not disturb it.

V.

WHEN LOCKETT WAS BROUGHT INTO THE COURTROOM BEFORE THE JURY IN SHACKLES, HE WAS DENIED HIS RIGHT TO DUE PROCESS.
Lockett argues he was denied the right to a fair trial, alleging that he was initially brought into the courtroom in view of prospective jurors with handcuffs on his arms and legs. Before trial, defense counsel sought and was granted relief via a motion in limine prohibiting the jury from viewing Lockett in shackles. Testimony is conflicting as to exactly what happened.
During the subsequent hearing on a motion for a new trial, one of the attorneys who represented Lockett at trial testified that he saw Carl for "no more than three seconds" standing handcuffed just outside the door to the courtroom. His attorney testified that he saw the sheriff immediately step in front of Carl before coming into the courtroom, and Carl was subsequently escorted in free of restraints. He remained free of restraints throughout the trial. His attorney was seated between the jurors and Carl with his back turned toward the jurors. He did not recall any questions being asked during voir dire about this incident. Indeed, none were asked. The other defense counsel, who was representing Lockett at the hearing on a motion for a new trial, indicated that his reason for not bringing up this matter during voir dire was that he did not want to emphasize the issue in the jurors' minds, believing it would cause more problems for his client than it would solve.
Lockett's father testified that Carl was brought about ten feet into the courtroom for "a few minutes" in handcuffs before officers took him out and removed the handcuffs.
At the time the incident occurred, defense counsel moved for mistrial, which the trial court denied, ruling:
Let the record indicate that prior to the jury selection, Mr. Townsend raised this matter and I suggested that he make this motion after the jury was empaneled, but without forfeiting any rights the defendant might have under the motion. The motion will be denied. I observed this event. The defendant was brought into the courtroom in handcuffs, not shackles. The handcuffs did not proceed into the courtroom more than three feet when I observed this and requested the officers to take him into the corridor and remove the handcuffs. Mr. Lockett was preceded into the courtroom by Sheriff Gill and another deputy to his right and another one behind him. He did not proceed past the first rail which is immediately to the right and lower half of the bench here. It would have been impossible for any member of the jury panel to have seen him from his position and their vantage point. Therefore it is my opinion and finding that the defendant has not been prejudiced by this and the motion will be denied.
This Court has ruled on this very issue in one case, see Rush v. State, 301 So.2d 297, 300 (Miss. 1974), and discussed this issue without deciding it in another, see Hickson v. State, 472 So.2d 379, 383 (Miss. 1985). Regardless of whose version is correct in the instant case, it is apparent under Rush that this incident did not deprive Lockett of his right to a fair trial. In Rush, the deputy sheriff brought the defendant into the courtroom in handcuffs in the presence of members of the special venire whereupon the handcuffs were immediately removed at the request of defendant's counsel. Rush, 301 So.2d at 300. Recognizing the common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, this Court held:

*1330 However, the failure, through an oversight, to remove handcuffs from a prisoner for a short time or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not ground for reversal. Rush, 301 So.2d at 300.
Here, at worst the defendant was ten feet in the courtroom for a few minutes. There is no evidence indicating that this incident occurred intentionally. Indeed, as in Rush, when the handcuffs were noticed, they were immediately removed. Accordingly, under the rationale in Rush, it does not appear that this incident deprived Lockett of his right to a fair trial. Further, the incident in Hickson, supra, was far more egregious than in the instant case in that the defendant was seated in view of the unselected jurors between thirty minutes and an hour. Hickson, 472 So.2d 382-83. The assignment of error is denied.

VI.

THE INTRODUCTION THROUGHOUT BOTH PHASES OF LOCKETT'S TRIAL OF EVIDENCE AND ARGUMENT CONCERNING A DISTINCT CRIME OF MURDER, AND OTHER CRIMES, DEPRIVED LOCKETT OF HIS RIGHTS UNDER THE CONSTITUTIONS OF THIS STATE AND OF THE UNITED STATES.
Prior to trial, the defense made a motion in limine to prevent any mention of the killing of Mrs. Calhoun. In making findings in overruling this motion, the trial court gave this explanation:
The Court further finds that while the kidnapping and murder of Mrs. Calhoun are separate crimes which ordinarily may not be proved by the State, in the defense for another crime, they are not independent crimes because they occurred in the course of the events following from the closely connected with the murder of Mr. Calhoun. Furthermore, the killing of the only eyewitness, other than the Defendant, to the first killing is an implied admission of guilt and is admissible as part of the State's case in chief on the first murder to establish malice aforethought and to negate the proposition that the first killing took place in self defense as a result of accident or misfortune or under circumstances amounting to manslaughter.
Lockett argues that it was error for the court to admit references to the death of Mrs. Calhoun elicited by the State during examination of its witnesses at trial and referred to by the State during closing arguments in both the guilt and sentence phases.
The State rebuts by contending that reference to Mrs. Calhoun's death falls within two exceptions to the general rule prohibiting reference to crimes other than that for which the defendant is on trial. First, the State argues that reference to Mrs. Calhoun's death falls within the exception where crimes are so interrelated as to constitute a single transaction or closely related transaction. Second, the State contends that evidence of Mrs. Calhoun's death was admissible to prove motive. See Neal v. State, 451 So.2d 743 (Miss. 1984).
Indeed, throughout the trial witnesses referred to Mrs. Calhoun's death. And, during closing argument in the sentencing phase, the prosecutor admonished the jury to "think about Geraldine Calhoun." Recently in Jenkins v. State, 507 So.2d 89 (Miss. 1987), this Court analyzed this issue under our new Rules, applicable here since Lockett was tried April 1-2, 1986. The starting points were Rules 401 and 402. Rule 402 provides that relevant evidence is generally admissible whereas irrelevant evidence is generally inadmissible. Rule 402, M.R.E. Rule 401 defines relevant evidence:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence.
As we noted in Jenkins, the initial inquiry before the Circuit Court and before this Court is whether the evidence in controversy, i.e., the murder of Mrs. Calhoun, has a tendency to make the existence of any fact that is of consequence to the determination of whether Lockett was guilty of the murder of Mr. John Calhoun more probable or *1331 less probable than it would have been without the evidence. See Jenkins, 507 So.2d at 91. After making this relevancy determination under 401, Jenkins would have us apply the probative value/prejudicial effect balancing test if the evidence were deemed relevant. See also Foster v. State, 508 So.2d 1111, 1117-18 (Miss. 1987).
Rule 404(b) provides that evidence of other crimes may be admissible for
other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Rule 404(b), Miss.R.Ev.
Accordingly, the relevancy of this evidence is governed by whether it falls under any of the exceptions in 404(b). We agree with the State's contention that the evidence of Mrs. Calhoun's murder by Lockett was so interrelated and interconnected in time of Mr. Calhoun's killing as to constitute a single or interconnected transaction, a basis for admissibility specifically noted in the Comments to Rule 404(b). Neal v. State, supra. Furthermore, the killing of Mrs. Calhoun was clearly motivated by Lockett's desire to effect a successful escape from his murder of Mr. Calhoun. Thus, the mention of her fate was relevant to establish an unlawful motive in the killing of her husband. Rule 404(b).
However, even if a 404(b) exception is invoked, "there is still the need to balance its probative value against the usual counterweights." McCormick, Evidence § 190, p. 565 (3d ed. 1984). Indeed, this is the analysis employed in applying the identical federal rule. See McCormick, § 190, p. 565; Comments, Rule 404(b), Federal Rules of Evidence; 22 Wright and Graham Federal Practice and Procedure: Evidence § 5240, p. 471 (1978); 10 Moore's Federal Practice § 404.01[5.2] p. IV-93 (1985). This requires the trial court to determine whether the "probative value is substantially outweighed by the danger of unfair prejudice," etc. This balancing is left to the trial court's broad discretion, Foster, 508 So.2d at 1117-18, and having said this we are of the view that the trial court committed no error here. The assignment of error is denied.

VII.

THE STATE'S ABUSE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE ALL THE BLACKS FROM LOCKETT'S JURY DEPRIVED HIM OF HIS RIGHT TO A REPRESENTATIVE JURY AND TO DUE PROCESS OF LAW.
Here Lockett asserts a claim under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), said to be retroactively available to him under Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
The record fails to reflect that Lockett made any contemporaneous objection to the prosecuting attorney's use of peremptory challenges. Lockett's Batson claim is thus barred under the authority of Thomas v. State, 517 So.2d 1285 (Miss. 1987), and Jones v. State, 517 So.2d 1295 (Miss. 1987).

VIII.

THE IMPARTIALITY OF THE VENIRE SELECTED TO TRY LOCKETT WAS REASONABLY QUESTIONED WHEN IT BECAME APPARENT THAT THERE WERE MANY CLOSE ASSOCIATES OF LAW ENFORCEMENT ON IT.
During voir dire by the defense, the following question was asked:
... I would like to know if any member of your family or you, yourself, are employed now by an law enforcement agency anywhere in the world? At any time in the past, have you or any member of your family been employed by any law enforcement agency anywhere?
Ten veniremen answered in the affirmative, with ties ranging from "I am a member of the National Guard" to "My father is a conservation officer in Jackson County." Thereafter, nine of the ten were struck by peremptory challenge. In the end, only one of the ten actually served on the jury. Juror No. 49, Mr. Fortner, whose *1332 daughter was employed by the Pascagoula Police Department, served as foreman of the jury.
Lockett argues that the jury which convicted and sentenced him to die was so "improbably replete with associates of law enforcement as to `adulterate its neutral and impartial decision.'" Mhoon v. State, 464 So.2d 77-81 (Miss. 1985). The State argues that there is no evidence of actual prejudice to Lockett as the result of the presence of Juror Fortner on the jury.
This issue was addressed in Mhoon v. State, 464 So.2d 77 (Miss. 1985). In Mhoon, the jury pool consisted of a twenty-six person special venire (all of whom were considered for seats on the jury) and a regular venire composed of 38 people (only 26 persons were considered for seats on the jury). After challenges for cause, both venires yielded the pool of thirty-nine venire persons: twelve of these 39 were either policemen or related by blood or marriage to a current or former police officer, although one of these twelve failed to reveal her police connection on voir dire. Of the twelve jurors selected to serve, a policeman in uniform served as foreman of the jury. Five others were related by blood or marriage to law enforcement members. Defense counsel moved to have the law enforcement-connected persons excused for cause, but this motion was denied by the court because each stated that his relationship would not influence his decision in the case and that he could render a fair decision based upon the evidence and the court instructions as to the law. Mhoon, 464 So.2d at 80.
The Court noted the statistical improbability of a situation such as this occurring. Mhoon, 464 So.2d at 80. The Court recognized that in the normal case there is no reason why, "if left unchallenged peremptorily, an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence." Mhoon, 464 So.2d at 81. However, the Court held that the jury in Mhoon was prejudicial due to "the sheer number of law enforcement-connected persons in the jury pool, as well as [those] selected as jurors." Mhoon, 464 So.2d at 81. Clearly, absent the statistical aberration present in Mhoon, this Court will not reverse simply because a member of members of a jury are somehow connected with law enforcement officials.
In the instant case only one juror in the entire pool who had any relation to a law enforcement official actually served on the final jury. Granted, this juror, whose daughter was employed by the Pascagoula Police Department (we do not know whether she was an officer), served as foreman of the jury. This contrasts with the extreme situation in Mhoon where the foreman of the jury was a uniformed policeman and six of the jurors who sentenced Mhoon to death were related by blood or marriage to policemen, highway patrolmen, or justice court judges. Accordingly, this assignment of error is without merit.

IX.

THE CHARGE OF CAPITAL MURDER WAS UNACCEPTABLY DUPLICITOUS, A FAULT INCURRED BY THE JURY VERDICT.
Lockett challenges the following jury instruction:
The Court instructs the jury that in the event you find beyond a reasonable doubt from the evidence presented the following, to-wit:
* * * * * *
4. At the time of such killing, if any, occurred, Carl Lockett was engaged in the crime(s) of burglary and/or robbery by: (a) ... entering into the dwelling house of John Earl Calhoun ... with the intent to, once inside, either steal the personal property situated therein or to unlawfully do violence to the persons situated therein; and/or (b) ... robbing and carrying away from the person of the said John Earl Calhoun ... a certain billfold ... then, in such event, you shall find the said Carl Lockett guilty of capital murder. [Emphasis added]
Lockett urges that this instruction allows the jurors to agree that he committed at least one of the acts listed, but disagree as *1333 to which of the acts he performed, violating his right to a unanimous jury verdict.
The State begins by arguing that Lockett's failure at trial to object to either the indictment or this instruction bars consideration of such on appeal.
Rule 5.03, Miss.Unif.Crim.R.Cir.Ct.Prac., clearly mandates that
At the conclusion of the taking of testimony the attorneys shall dictate into the record their specific objections to the requested instructions and specifically point out the grounds for objection.
Rule 5.03, Miss.Unif.Crim.R.Cir.Ct.Prac.
And, Supreme Court Rule 42 provides:
[N]o assignment of error based on the giving of instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. However, in extreme cases this Court may raise an objection to a jury instruction in order to prevent manifest injustice.
Rule 42, Miss.Sup.Ct.R.
Moreover, in Gray v. State, 472 So.2d 409, 416 (Miss. 1985) the defendant assigned as error the trial court's failure to instruct the jury defining the elements of the underlying felony (kidnapping) which elevated the murder to capital murder. This Court noted that Gray failed to object to the instructions offered by the State and, more importantly, failed to submit an instruction to the court on the elements of kidnapping. This combined failure to object and request an appropriate instruction operated to waive Gray's assigned error on appeal. Gray, 472 So.2d at 416; see also Billiot v. State, 454 So.2d 445, 462 (Miss. 1984); Gilliard v. State, 428 So.2d 576, 583 (Miss. 1983); Bieller v. State, 275 So.2d 97, 99 (Miss. 1973).
Here, the defense made no objection when the court ruled that it would give the questioned instruction. Further, there is no indication that defense counsel offered an alternative instruction. Accordingly, under the cited rules and cases, it appears settled in our law that failure to challenge a given instruction or offer another in its place renders this assignment of error meritless, even in the context of a capital case.
The assignment of error is denied. This concludes our discussion of the issues relating only to the guilt phase. For the reasons stated above, we affirm the conviction of Carl Daniel Lockett of the capital murder of John Calhoun.

PENALTY OR SENTENCING PHASE

X.

THE PROSECUTION COMMITTED MISCONDUCT THAT RENDERED LOCKETT'S TRIAL FUNDAMENTALLY UNFAIR.
Lockett raises the issue of prosecutorial misconduct, citing questions asked by the prosecutor during voir dire and statement made by the prosecutor during closing argument at the sentencing phase as being inflammatory. The State rebuts by attempting to erect a procedural bar due to lack of any objection by defense counsel at trial. On the merits, the State argues that the cited comments, when read in the proper context, and in light of the entire record, do not constitute reversible error.
This Court on numerous occasions has refused to consider the issue of prosecutorial misconduct where the defendant did not raise it at trial and we so refuse to do so today. See, e.g., Dufour v. State, 483 So.2d 307, 311 (Miss. 1985); Billiot v. State, 478 So.2d 1043, 1045 (Miss. 1985); In re Hill, 460 So.2d 792, 799 (Miss. 1984); Smith v. State, 434 So.2d 212, 216 (Miss. 1983); Read v. State, 430 So.2d 832, 836 (Miss. 1983). Alternatively reaching the merits, however, Lockett's claim fails. The question for this Court is whether the prosecutor's remarks denied the defendant a fundamentally fair trial. Stringer v. State, 500 So.2d 928, 939 (Miss. 1986); see also United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1, 13 (1985); Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431, 438 (1974). The prosecutor's remarks are viewed in light of the entire trial. See Donnelly, 416 U.S. at 645, 94 S.Ct. at 1872, 40 L.Ed.2d at 438; U.S. v. Bright, 630 F.2d 804, 825 (5th Cir.1980); U.S. v. Austin, 585 F.2d 1271, 1279 (5th Cir.1978).
*1334 Three of the alleged inflammatory comments were made by the prosecutor during his questioning of the jurors on voir dire. First, the "comments proscribing mercy" as described by Lockett simply do not exist at the referenced pages. The questions asked on these pages simply inquire whether the jurors will decide the case based on the law and evidence and not speculation or conjecture. This does not constitute reversible error.[5] Second, the "comments absolutely forbidding ... jury discretion," are actually questions asked to determine whether the jurors would accept the law as framed by the court in the instructions. Likewise, this does not constitute reversible error.[6] Third, defense counsel points to a question asked by the prosecutor seeking to determine if jurors would put aside any sympathy or emotions that might interfere with the verdict.[7] This question fails to constitute reversible error as well.
Next Lockett moves to the prosecutor's comments made during the closing argument at the sentencing phase. He first contends the prosecutor stated that "a life sentence is like probating a sentence." Examining the prosecutor's argument at the cited page indicates that no such remark was made. Lockett then points to the prosecutor's statement that "the death penalty by lethal injection is a painless manner, administered by doctors, is a very merciful sentence to this defendant" following by prosecutor's comment that he had observed Lockett and saw no remorse in him whatsoever. Lockett argues that the comment on death by lethal injection was improper because he was not allowed to rebut with evidence of the mental and physical agonies of life on death row. See Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Jordan v. State, 518 So.2d 1186 (Miss. 1987). He argues that the comment regarding remorse was one made on his Fifth Amendment privilege against self-incrimination. Viewed in light of all the evidence, these comments do not seem to constitute reversible error.
Lockett also points to prosecutorial comments regarding forgiveness and to whom such forgiveness belonged. He contends that these comments clearly invited the jury to speculate on appellate reversal of the death sentence. However, there is no mention of appellate review of the effect of a life sentence as those points have been addressed in relevant cases decided by this Court. Williams v. State, 445 So.2d 798, 812-13 (Miss. 1984); Mhoon, 464 So.2d 77, 83 (Miss. 1985); Wiley v. State, 484 So.2d 339, 344-46 (Miss. 1986); see also Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
The assignment of error is denied.

XI.

THE EXCUSAL OF VENIREPERSON CREAR WITHOUT THE SHOWING OF PREDISPOSITION AGAINST THE DEATH PENALTY REQUIRED IN FUSELIER V. STATE CANNOT BE SQUARED WITH LOCKETT'S CONSTITUTIONAL RIGHTS.
Lockett points to Crear's statement he would be criticized at home or in *1335 church for a verdict of death and that he did not believe in the death penalty as falling far short of the requirement set forth in Fuselier v. State, 468 So.2d 45, 55 (1985) wherein this Court held a "clear showing that a juror's views would prevent or significantly impair the performance of his or her duties requires more than a single response to an initial inquiry." The State contends that an examination of the entire portion of voir dire pertaining to Crear's attitude about capital punishment clearly justifies his excusal for cause based on controlling state and federal guidelines.
Prospective jurors in capital cases may only be excluded for cause based upon their views on capital punishment when those views would "prevent or substantially impair the performance of [their] duties as juror(s) in accordance with [their] instructions and [their] oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851-52 (1985); see also Fuselier v. State, 468 So.2d 45, 53-54 (Miss. 1985) (adopting Witt); Wiley v. State, 484 So.2d 339, 344 (Miss. 1986). And, because of the inherent difficulty in formulating an exact set of questions and answers that would disqualify a juror, "deference must be paid to the trial judge who sees and hears the jurors." Witt, 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853; see also Irving v. State, 498 So.2d 305, 312 (Miss. 1986).
Here, during voir dire, the State asked if any of the jurors believed they would be unable to follow the law and evidence dictating infliction of the death penalty. Juror No. 8, Mr. Crear, stated that he did not believe in the death penalty. Afterwards, defense counsel asked the jurors if they could put aside strong, moral religious beliefs about the death penalty and follow the instructions given to them by the court. Mr. Crear responded that he could not. The State thereafter challenged Juror Crear for cause, and the court sustained the challenge to which defense counsel objected.
Applying Crear's responses to the test set forth in Witt and recognized by this Court in Fuselier, it certainly appears that his views on punishment would not only substantially impair but also prevent him from performing his duties as a juror by following instructions of law permitting the jury to invoke the death penalty. As such, this assignment of error is without merit.

XII.

THE SUBMISSION TO THE JURY OF THE AGGRAVATING CIRCUMSTANCES ALLEGING THE COMMISSION OF A MURDER IN THE COURSE OF A BURGLARY, ROBBERY AND/OR A KIDNAPPING DENIED LOCKETT HIS CONSTITUTIONAL RIGHTS.
In sentencing Lockett to death, the jury unanimously found four aggravating factors:
1. The capital offense was committed for pecuniary gain.
2. The capital offense was especially heinous, atrocious or cruel.
3. The capital offense was committed by a person under sentence of imprisonment.
4. The capital offense was committed while defendant was engaged in burglary, robbery, and/or kidnapping, or in an attempt to commit one or more of such crimes.
These aggravating facts fall within the permissible ambit of aggravating factors set forth in Miss. Code Ann. § 99-19-101(5) (Supp. 1986). Under Miss. Code Ann. § 99-19-103 (Supp. 1986) the death penalty shall not be imposed unless the jury unanimously finds at least one of the statutory aggravating circumstances set forth in Section 99-19-101. Of course, at least one aggravating circumstance must be found after the jury has balanced any mitigating circumstances against aggravating circumstances. See Miss. Code Ann. § 99-19-101 (Supp. 1986). Here, the jury was instructed to consider the age of the defendant at the time of the crime and any other matter brought up at trial which the jury would deem to be mitigating on behalf of the defendant. Thereafter, the jury found all four aggravating circumstances to exist *1336 and insufficient mitigating circumstances to outweigh the aggravating circumstances. On this appeal, Lockett challenges the submission of the four aggravating circumstances for the jury's consideration.
Lockett challenges the submission to the jury of the following aggravating circumstance:
(4) Whether the capital offense was committed while the defendant was engaged in burglary, robbery and/or kidnapping, or in an attempt to commit one or more of such crimes.
Lockett argues that this instruction and a subsequent verdict based upon an aggravating circumstance tracking this instruction violated his constitutional rights in four respects. First, Lockett urges that the instruction failed to define kidnapping, a crucial element included in the instruction which did not appear in the indictment. Second, Lockett contends that this instruction, coupled with the burglary instruction submitted at the guilt phase, allowed eight alternative routes to the imposition of death, constituting unconstitutional multiplicity. Third, while acknowledging lack of support in Mississippi case law for his position, Lockett contends that the submission of this aggravating circumstance at the sentencing phase causes him to automatically have a strike against him towards death due to an identical finding at the guilt phase. Fourth, and finally, Lockett submits that under the law of this state, an invalid aggravating circumstance, coupled with the trial court's finding of a mitigating circumstance, requires that the death sentence be set aside.
Since the evidence at trial was sufficient to support both the underlying felonies of burglary and robbery, it seems that the addition of the crime of kidnapping in the sentencing instruction was surplusage. See Caldwell v. State, 481 So.2d 850, 853-54 (Miss. 1985). As to Lockett's claim that the invalidity of one aggravating circumstance, coupled with a mitigating factor vacates the death sentence, this Court embraced the rationale of Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) in holding that where the jury's death penalty is predicated on several aggravating circumstances, the invalidity of one of those circumstances will not constitutionally impair the sentence. Stringer v. State, 500 So.2d 928, 944-45 (Miss. 1986).
Lockett's contention that it was improper for the jury to consider as an aggravating circumstance that the capital offense was committed while he was involved in the commission of a burglary and/or robbery has been rejected in Leatherwood v. State, 435 So.2d 645 (Miss. 1983) cert den. 465 U.S. 1084, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984), this Court refused to agree with such an argument. This Court held:
Under our capital murder statute, when an accused is found guilty of capital murder arising out of a robbery, he then becomes subject to a jury finding that he should be executed if the jury feels that the facts justify it. However, his execution is not mandated and the jury may properly find that he should be sentenced to life in prison. They may so find whether the defendant puts on any evidence of mitigating circumstances or not.
Leatherwood, 435 So.2d at 650. See also Billiot v. State, 454 So.2d 445, 465 (Miss. 1984); Tokman v. State, 435 So.2d 664, 668-69 (Miss. 1983); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
The assignment of error is denied.

XIII.

THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE AGGRAVATING CIRCUMSTANCE OF A MURDER COMMITTED WHILE UNDER SENTENCE OF IMPRISONMENT.
As noted supra, one of the aggravating circumstances found by the jury was a five year probationary sentence imposed on Lockett in Texas in 1983. Specifically, this conviction resulted from Lockett's pleading guilty in a Texas state court in 1983 to the crime of theft. Following his plea of guilty, Lockett was sentenced to a *1337 term of five years, service of which was probated. This crime was a felony of the third degree in Texas, subject to a maximum sentence of not more than ten years nor less than two years and a fine of up to $5,000.00. The instant crime occurred in December, 1985, two years into the Texas sentence.
Lockett asserts a two-pronged attack on this aggravating circumstance. First he contends that the Texas conviction should be viewed as a juvenile disposition in this state since Lockett was under eighteen at the time he received the sentence. Second, Lockett urges that a probated sentence is not a "sentence under imprisonment" within the ambit of Miss. Code Ann. § 99-19-101(5)(a) (Supp. 1986). The State contends that fact that Lockett might have been treated as a juvenile had he been convicted of the crime in Mississippi rather than Texas is of no consequence to this appeal. Further, the State points to this Court's decision in Evans v. State, 422 So.2d 737, 742 (Miss. 1982) wherein it was held that a probationary sentence constitutes a sentence under imprisonment for purposes of satisfying the aggravating circumstance under XX-XX-XXX(5)(a).
Miss. Code Ann. § 99-19-101(5)(a) (Supp. 1986) provides that one aggravating circumstance that can be considered in the sentencing phase of a capital offense is
(a) The capital offense was committed by a person under sentence of imprisonment.
Nothing in the statutory language requires that the sentence of imprisonment be pursuant to a Mississippi conviction. Further, as this Court has explicitly held in Evans, supra,
[W]hen a person has been convicted and placed on probation, particularly here, where four (4) years of a five-year sentence were suspended, such sentence is a sentence under imprisonment.
Evans, 422 So.2d at 742.
Accordingly, this assignment of error is without merit.

XIV.

THE SUBMISSION OF THE AGGRAVATING CIRCUMSTANCES OF HEINOUS, ATROCIOUS AND CRUEL DENIED LOCKETT HIS RIGHTS UNDER THE CONSTITUTIONS OF THIS STATE AND THE UNITED STATES.
Acknowledging this Court's rejection of this claim in practically all of the cases where it was considered, Lockett nevertheless contends that the facts in this case were not sufficient to support such an aggravating circumstance. Specifically, Lockett argues that the evidence is uncontraverted that the victim here was shot dead as soon as he opened the door to his house. Accordingly, Lockett argues that there is no evidence supporting this aggravating circumstance.
The State rebuts by arguing that the evidence shows that the victim was shot once, after which Lockett fired an additional "four to five rounds." The State argues that there is no evidence to indicate that Mr. Calhoun was dead or even unconscious when the latter shots were fired. The State cites as support several cases in which this Court has refused a similar claim.
These facts seem closely analogous to those which did not require reversal in Jones v. State, 517 So.2d 1295 (Miss. 1987). See also Wiley v. State, 484 So.2d 339, 356-63 (Miss. 1986). On the authority of Jones and Wiley, the assignment of error is denied.

XV.

THE SUBMISSION OF THE AGGRAVATING CIRCUMSTANCE OF PECUNIARY GAIN CONSTITUTED THE DOUBLE JEOPARDY, AND FAILED MEANINGFULLY TO NARROW THE CLASS OF PERSONS ELIGIBLE FOR THE DEATH SENTENCE.
Lockett urges that the submission of the pecuniary gain aggravating circumstance constituted stacking, violating double jeopardy. The State simply relies on numerous cases in which this Court has *1338 rejected this particular argument. Again on the authority of Jones, supra, and Wiley, supra, the assignment of error is denied.

XVI.

THE INSTRUCTIONS AT THE PENALTY PHASE DEPRIVED LOCKETT OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND MISSISSIPPI LAW.
Lockett argues that the instructions in this case failed adequately to inform the jury of their option to recommend life, even where aggravating circumstances may be found to outweigh mitigating circumstances.
In the instant case, the court clearly instructed the jury that it should weigh mitigating circumstances against aggravating circumstances and if the former outweighed the latter, then it should return a sentence of life imprisonment.
We have held repeatedly that the trial court is not required to give a so-called mercy instruction. See, e.g., Johnson v. State, 477 So.2d 196, 221-22 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); Cabello v. State, 471 So.2d 332, 348 (Miss. 1985). The assignment of error is denied.

XVII.

THE IMPOSITION OF THE DEATH PENALTY UPON A PERSON WHO DOES NOT INTEND TO COMMIT MURDER VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Following the sentencing phase, the jury was instructed that in order to return a sentence of death, it must first find, from the evidence beyond a reasonable doubt one or more of the following:
1. The defendant actually killed John Earl Calhoun; or
2. The defendant attempted to kill John Earl Calhoun; or
3. The defendant intended that the killing of John Earl Calhoun take place; or
4. The defendant contemplated that lethal force would be employed.
The jury returned a verdict finding that:
A1. The defendant actually killed John Earl Calhoun;
A2. The defendant attempted to kill John Earl Calhoun;
A4. The defendant contemplated that lethal force would be employed.
Lockett argues that the lack of the jury's finding that he intended to kill Mr. Calhoun necessitates reversal under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), providing that it is cruel and unusual punishment to inflict the death penalty upon one who does not intend death.
This issue was specifically addressed in Jordan v. State, 464 So.2d 475 (Miss. 1985). In that case, this Court held that the death penalty is permissible where one of the four conditions provided in the instructions in the instant case is found. Jordan, 464 So.2d at 479. Accordingly, this assignment of error is without merit.

XVIII.

THE DEATH SENTENCE IMPOSED UPON LOCKETT IS DISPROPORTIONATE AND WAS THE CONSEQUENCE OF EMOTION AND CAPRICE.
Lockett finally argues that the death sentence imposed upon him is disproportionate due to the fact that he is young, from a deprived background, has no significant criminal history, was convicted of a crime for which no motive appears and which was the product of schizophrenia. Further, fundamental constitutional errors in the trial and sentence requires that his death sentence be set aside.
A review of past death penalty cases indicates that the death penalty, if no constitutional error is found in Lockett's trial, is not disproportionate to the sentence. See Jones v. State, 517 So.2d 1295 (Miss. 1987) (Appendix "A").

*1339 CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. WEDNESDAY, NOVEMBER 25, 1987, SET AS DATE FOR EXECUTION OF SENTENCE IN THE MANNER PROVIDED BY LAW.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and GRIFFIN, J., concur.
ROBERTSON, PRATHER, SULLIVAN and ANDERSON, JJ., concur in part, dissent to parts III(A), VI, XIV, and XV.

APPENDIX A

DEATH CASES AFFIRMED BY THIS COURT:
Bullock v. State, No. DP-14 (Miss. September 2, 1987).
Cole v. State, No. DP-58 (Miss. July 19, 1987).
Faraga v. State, 514 So.2d 295 (Miss. 1987).
Jones v. State, 517 So.2d 1295 (Miss. 1987).
Wiley v. State, 484 So.2d 339 (Miss. 1986).
Johnson v. State, 477 So.2d 196 (Miss. 1985).
Gray v. State, 472 So.2d 409 (Miss. 1985).
Cabello v. State, 471 So.2d 332 (Miss. 1985).
Jordan v. State, 464 So.2d 475 (Miss. 1985).
Wilcher v. State, 455 So.2d 727 (Miss. 1984).
Billiot v. State, 454 So.2d 445 (Miss. 1984).
Stringer v. State, 454 So.2d 468 (Miss. 1984).
Dufour v. State, 453 So.2d 337 (Miss. 1984).
Neal v. State, 451 So.2d 743 (Miss. 1984).
Booker v. State, 449 So.2d 209 (Miss. 1984).
Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE:
Davis v. State, 512 So.2d 1291 (Miss. 1987).
Williamson v. State, 512 So.2d 868 (Miss. August 12, 1987).
Foster v. State, 508 So.2d 1111 (Miss. 1987).
Smith v. State, 499 So.2d 750 (Miss. 1986).
West v. State, 485 So.2d 681 (Miss. 1985).
Fisher v. State, 481 So.2d 203 (Miss. 1985).
Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Fuselier v. State, 468 So.2d 45 (Miss. 1985).
West v. State, 463 So.2d 1048 (Miss. 1985).
Jones v. State, 461 So.2d 686 (Miss. 1984).
Moffett v. State, 456 So.2d 714 (Miss. 1984).
Lanier v. State, 450 So.2d 69 (Miss. 1984).
Laney v. State, 421 So.2d 1216 (Miss. 1982).

*1340 DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:
Stringer v. State, 500 So.2d 928 (Miss. 1986).
Pinkton v. State, 481 So.2d 306 (Miss. 1985).
Mhoon v. State, 464 So.2d 77 (Miss. 1985).
Cannaday v. State, 455 So.2d 713 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (Miss. 1984).
Williams v. State, 445 So.2d 798 (Miss. 1984).
ROBERTSON, Justice, concurring in part, dissenting in part:

I.
Admissibility of much of the evidence against Carl Daniel Lockett  the two guns, John Calhoun's credit cards, etc.  turns upon the authority of law enforcement officials as they searched the Lockett home on December 14, 1985. That authority in turn is no greater than that conferred upon officers by a search warrant issued by Justice Court Judge Billy Ray Brown. The outcome determinative question is not whether there was probable cause but whether the warrant was issued by one who as a matter of objective fact was a neutral and detached magistrate  a constitutional requisite for authority to issue a valid search warrant.
To begin with, the facts do not reflect that Officers Craft and McCrory and Investigator Burnham went to Judge Brown at his office or at the courthouse to obtain the warrant. Rather, Officer McCrory called Judge Brown and asked that he make a housecall  that he come to the Lockett home.
When Judge Brown arrived, he initially gave Officer Craft a warrant to search for marijuana. Craft replied that he needed a warrant for stolen goods, not marijuana, and Judge Brown complied, issuing a warrant for stolen property, i.e.,
the guns that was [sic] used in the murder of Mr. and Mrs. John Calhoun.
Doubt that Judge Brown came to the Lockett home in the subjective attitude of a neutral and detached magistrate was quickly confirmed. His official duty completed, Judge Brown did not return to his office. He remained on the scene for a considerable period of time. True, he did not enter the Lockett home. But Judge Brown allowed Yancy Lockett, Carl's brother, to sit in the car with him, and proceeded to discuss the case. During the course of this conversation, Yancy told Judge Brown that he knew where Carl Lockett was. Rather than report to the officers the information he had been given or, even more appropriately, instruct Yancy Lockett to make his report to the officers, Brown decided to play cop. With Yancy Lockett in handcuffs, Judge Brown then drove him on an investigative tour in search of Carl. It was not Judge Brown's fault that the search was unsuccessful. Upon returning to the scene, Judge Brown then appeared on television. Finally, Judge Brown joined a convoy of law enforcement officers and drove Yancy Lockett to the sheriff's office.
The majority opinion correctly states the rule: Under both federal and state constitutions, no search warrant confers lawful authority upon an officer unless it has been issued by one who in fact and in law qualifies as "a neutral and detached magistrate," citing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920, 928 (1979) and its progenitors; see also McCommon v. State, 467 So.2d 940, 942 (Miss. 1985), cert. den. 474 U.S. 984, 106 S.Ct. 393, 88 L.Ed.2d 345 (1985). In Lo-Ji, a town justice issued a warrant for seizure of obscene materials and then went with the searching officers to the scene, participating in the execution *1341 of the warrant. Lo-Ji, 442 U.S. at 321-23, 99 S.Ct. at 2321-23, 60 L.Ed.2d at 925-26. The Supreme Court condemns such activity, holding that it was difficult to discern whether the judge was acting as a neutral and detached officer when he was "one with the police and prosecution" in the seizure. Lo-Ji, 442 U.S. at 328, 99 S.Ct. at 2325, 60 L.Ed.2d at 929.
In Thomason v. State, 148 Ga. App. 513, 251 S.E.2d 598, 599 (1978), a justice court judge, after issuing a search warrant, went with the officers to the scene. After the premises were secured, the judge went into the home and stayed until the search was completed. While in the home, the justice court judge observed the procedure and items being seized, talked with officers as well as an occupant of the home, and remained for one and a half hours until the search was concluded. Afterwards, the judge accompanied law enforcement officers to the jail. Thomason, 251 S.E.2d at 599. The Georgia Court held that the judge had conveyed the impression that he had "thrown in" with the law enforcement officials and, accordingly, lost his status as a neutral and detached magistrate. See also Vaughn v. State, 160 Ga. App. 283, 287 S.E.2d 277 (1981) (per se reversal where magistrate has informal association with law enforcement officers).
We recently considered a similar question in McCommon v. State. In the face of considerable evidence that the justice court judge in McCommon had departed from his proper role as a neutral and detached magistrate, we nevertheless affirmed a conviction on the premise that there was in any event probable cause adequate to support issuance of the warrant. We have been reminded, however, that the neutral and detached magistrate requisite for a valid search warrant is independent of the requirement of probable cause. In his dissent to denial of certiorari in McCommon, Justice Brennan wrote:
This attempt to evade review of the judge's lack of independence should not succeed. In Coolidge v. New Hampshire, 403 U.S. at 450-51, 91 S.Ct. 2029-30, we firmly rejected the argument that "the existence of probable cause renders compliance with the warrant procedure an irrelevance." Indeed, in Coolidge, the Court declared that because the warrant was not issued by "the neutral and detached magistrate required by the Constitution, the search stands on no firmer ground than if there had been no warrant at all." Id. at 453, 91 S.Ct. at 2031.
McCommon, 106 S.Ct. at 395.
I said what should here be said as well as I can say it, in my separate opinion in McCommon, 467 So.2d at 944-45, in which Justice Dan M. Lee and Justice Sullivan joined. A part of that opinion I now plagiarize:
I wish to state in language clear and unequivocal that I for one regard the attitude displayed by Judge [Brown] ... in this case as wholly out of line. It is inconsistent with the judicial character of the office Judge [Brown] ... holds. On his oath, Judge [Brown] ... and the other justice court judges of the state are not mere adjuncts of law enforcement. They are judges, sworn to act like judges.
Detachment and neutrality are the essence of judicial behavior. In each case within his or her jurisdiction, the judge is required to find the facts fairly and impartially, to identify the applicable rule of law by reference to his education, training and experience, and finally to apply the rule to the facts and achieve a result. This we call an adjudication. These things each judge  including justice court judges  must do without fear or favor, letting the chips fall where they may.
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens (including law enforcement officers) have their primary, if not only, direct contact with the law through the office of the justice court judge. See In Re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss. 1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If our justice court judges do *1342 not behave with judicial temperament and perform their duties by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the judicial process.
Second, in the context of this case, it is the justice court judge who has the front line responsibility for translating into a living and breathing reality the right of citizens to be secure from unreasonable search and seizures and from issuance of search warrants except upon probable cause. These are rights secured by the Fourth Amendment to the Constitution of the United States and by Article 3, Section 23 of the Mississippi Constitution of 1890. As such they are fundamental rights. Our people will little understand or enjoy these rights except they be respected by our justice court judges. As a practical matter, no exclusionary rule or other remedial device can secure vindication of Fourth Amendment/Section 23 rights as effectively and efficiently may the justice court judges of this state, if they will only do their duty.
Finally, the application for a search warrant is one of the few instances in our judicial system where judges are authorized to make adjudications without hearing from the party affected. Application for a search warrant is made by a law enforcement officer under circumstances where it is wholly impracticable to afford the party to be searched an opportunity to present his case to the effect that there may be no probable cause. Because of the ex parte nature of the proceedings, it is all the more important that our justice court judges do their duty consistent with the three steps of the process of adjudication described above.
* * * * * *
Little expertise in the law is required for one to know that the title "judge" connotes neutrality and impartiality. A high school civics student knows that a judge by the nature of his office may not act out of favoritism or partiality toward one party or the other. Whatever prerogative other public officials may have to help one interest group or another, detachment is demanded of our judges.
When a person assumes the office of justice court judge in this state, he or she surrenders the right to favor law enforcement officials, those criminally accused, collection agencies, or anyone else. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges.
McCommon, 467 So.2d at 944-45.
I have little hesitation in concluding, based on the facts before us, that Judge Brown departed from his judicial role and acted as an adjunct of law enforcement. His conduct before and particularly after issuance of the warrant belies any suggestion that, as a matter of objective fact, Brown was a neutral and detached magistrate. This constitutional requisite removed, the officers had no authority to search the Lockett home.
I respectfully dissent to the majority's view expressed in Part III(A), Neutral and Detached Magistrate, pages 1322-1323.

II.
There is a second issue where the majority goes astray. I refer to the imprimatur placed upon the circuit court's refusal to exclude evidence of the murder of Geraldine Calhoun.
The issue is controlled by the relevancy rules of the Mississippi Rules of Evidence. We begin with Rule 401, which provides:
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
*1343 See Foster v. State, 508 So.2d 1111, 1117-18 (Miss. 1987); Jenkins v. State, 507 So.2d 89, 91-92 (Miss. 1987).
Our question is whether the killing of Geraldine Calhoun was a fact of consequence to the determination of the indictment charging Lockett with the capital murder of John Calhoun. In this regard, the evidence reflects without contradiction that Lockett shot and killed John Calhoun when he returned to his home on the morning of December 13, 1985. He removed the contents of Calhoun's pocket and thus effected the robbery component of the capital murder charge. At that moment the crime of capital murder was completed.
That Lockett then took Geraldine Calhoun to the chicken house and killed her is a matter legally and factually irrelevant to "any fact that is of consequence to the determination of the" capital murder charge here at issue. Put otherwise, the prosecution could easily have told a rational and coherent story of the capital murder of John Calhoun without ever mentioning what had become of Geraldine Calhoun. See Neal v. State, 451 So.2d 743, 759 (Miss. 1984). Indeed, I do not understand the majority to contend that evidence of the second, subsequent murder is admissible under Rule 401.
The majority, however, says that evidence of the killing of Geraldine Calhoun is admissible as evidence of other acts within Rule 404(b), Mississippi Rules of Evidence, which reads:
(b) Other Crimes, Wrongs, or Acts.
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Sensibly this is not so, not if the limitation found in the wording of Rule 404(b) be held to mean anything. Even if it be admissible under Rule 404(b), evidence must then pass the prejudice test of Rule 403; that is, evidence admissible under Rule 404(b)
may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ... .
See Jenkins v. State, 507 So.2d at 92-93.
In the context of the facts of this case, and with reference to the specific language of Rule 404(b), a series of questions must be considered. Was evidence of the killing of Geraldine Calhoun necessary to prove Lockett's motive for killing and robbing John Calhoun? Obviously not. Was it necessary to prove Lockett's opportunity to kill and rob John Calhoun? Again, no. Was such proof of the killing of Geraldine Calhoun reasonably related to proving Lockett's intent to kill and rob John Calhoun? His preparation for the killing and robbing of John Calhoun? His plan to do such? Knowledge? Identity? Or absence of mistake or accident? The answer to these questions is so apparently no, that I do not see how it could seriously be argued to the contrary.
The majority, however, reasons that the second killing in another location was a part of a single interconnected transaction and was relevant to establish Lockett's "unlawful motive" in killing John Calhoun. How these assertions may be so escapes me. If temporality and geography be of consequence, the capital murder of John Calhoun was a completed event, factually and legally, before Geraldine was taken to the chicken house. I doubt a cognitive process may be imagined, rational or otherwise, which would render the subsequent killing of Geraldine Calhoun probative of Lockett's motive for the capital murder of John Calhoun. The majority opinion certainly suggests none.
Beyond this, the majority holds the second, subsequent killing of Geraldine Calhoun admissible as Lockett's effort "to effect a successful escape." The problem, of course, is that nothing in Rule 404(b) authorizes receipt of evidence of other wrongs or acts for such purpose. The time and place for such evidence was at Lockett's second trial, where he was under indictment for the capital murder of Geraldine Calhoun. See Lockett v. State, 517 So.2d 1346 (Miss. *1344 1987). There is more than enough liberality in the relevancy sections of the Mississippi Rules of Evidence without the Court adding its own deposit.
While this is our first occasion to consider this particular Rule 404(b) question, there is experience available in other states having an identical rule. In State v. Robtoy, 98 Wash.2d 30, 653 P.2d 284 (1982), the defendant was on trial for the murder of one David King. The Court held under Rule 404(b) that evidence that several months earlier defendant had killed someone else was inadmissible to show motive and premeditation. 653 P.2d at 291-93. In State v. Bojorquez, 151 Ariz. 611, 729 P.2d 965 (Ariz. App. 1986), defendants had been convicted of armed robbery. Heroin and heroin paraphernalia were found on defendants at the time of arrest. The Court held that evidence inadmissible:
The heroin evidence in this case did not complete the story of the robbery, rather, it was evidence of a completely separate criminal action whose only purpose could be to prejudice the jury.
Bojorquez, 729 P.2d at 967. See also discussions in State v. Morgan, 315 N.C. 626, 340 S.E.2d 84, 90-93 (1986); and State v. Lamb, 84 N.C. App. 569, 353 S.E.2d 857, 865 (1987).
Our law has heretofore provided that the issue on a criminal trial should be single and that the evidence should be limited to that relevant under the indictment. Brown v. State, 483 So.2d 328, 330 (Miss. 1986); Crafton v. State, 200 Miss. 10, 14, 26 So.2d 347, 348 (1946). Evidence of other criminal activity on the part of the accused is ordinarily inadmissible where the prior offense has not resulted in a conviction. Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Stringer v. State, 500 So.2d 928, 950 (Miss. 1986) (Robertson, J., dissenting). At the time in question, Lockett had not yet been convicted of the killing of Geraldine Calhoun.
The reason for the rule has been oft stated. Sumrall v. State, 272 So.2d 917, 919 (Miss. 1973); May v. State, 199 So.2d 635, 641 (Miss. 1967); Herman v. State, 75 Miss. 340, 345, 22 So. 873 (1898). Proof of another crime is reasonably likely to influence ordinary jurors toward conviction  while in law guilt of the other crime is no evidence of guilt of the crime under the indictment.
The point in the present case is that evidence of the killing of Geraldine Calhoun is not a part of the rational and coherent story of what happened. Compare United States v. Currier, 821 F.2d 52, 56 (1st Cir.1987). What Carl Lockett did after he completed the capital murder of John Calhoun is simply not a part of that story, the contours of which are defined by the indictment and Rules 401 and 404(b). Omission of such subsequent happenings is not the sort of omission that might lead jurors to think that something of importance was being withheld.
Assuming arguendo, that the evidence of the killing of Geraldine Calhoun can somehow be brought within Rule 404(b), such evidence clearly flunks the prejudice test of Rule 403. The "probative value" of this evidence is slight, if it exists at all. On the other hand, proof of the details of the execution style murder of Geraldine Calhoun is far more likely to inflame the jury, not only to return a verdict of guilty of capital murder of John Calhoun but also to return a death penalty. I do not see how anyone could sensibly argue that this evidence is not pregnant with danger of unfair prejudice which "substantially outweighs" any probative value. See Foster v. State, 508 So.2d at 1117; Jenkins v. State, 507 So.2d at 92-93; United States v. Currier, 821 F.2d 52, 56 (1st Cir.1987); State v. Robtoy, 98 Wash.2d 30, 653 P.2d 284, 293 (1982).
To say that the majority's consideration of the Rule 403 point is inadequate is an understatement. The trial court has discretion; therefore, we affirm, or so we are told. What we are not told is how the obvious and substantial prejudice to Lockett from proof of what he did to Geraldine Calhoun may be outweighed by the probative value of such evidence.
In my view, we have a situation where probative value is measured by Rule 404(b), not Rule 401. Rule 404(b) evidence by definition *1345 is less probative than Rule 401 evidence, for the rather apparent reason that a Rule 401 failure subjects the prosecution to a directed verdict of acquittal but Rule 404(b) failure does not. On the other hand, prejudice has reference to the likelihood that the jury may convict by reason of facts other than those necessary to prove the charge made in the indictment. So measured, the probative value of evidence of the killing of Geraldine Calhoun is so obviously outweighed by substantial prejudice to Lockett flowing therefrom that I regard admission of the evidence a gross abuse of discretion.
In the end, I disapprove the majority's rewriting the relevancy part of our new Mississippi Rules of Evidence. Those rules, particularly here Rules 404(b) and 403, were carefully drafted and worded. They strike a fair balance between the interests at stake at a trial. They are to be taken seriously. To be sure, the language is open textured, but that fact does not validate the license the majority asserts today to make of the rules what it will.

III.
The Court affirms the jury's finding that the capital murder of John Calhoun was "especially heinous, atrocious or cruel." Miss. Code Ann. § 99-19-101(5)(h) (Supp. 1986). See Part XIV, Majority Opinion, at p. 1302. In so doing, the Court completes its victory over the legislative mandate, as by any objective standards the killing of John Calhoun was one of the least heinous, atrocious or cruel we have seen. We have rewritten the statute to a point beyond recognition by persons familiar with the meaning ordinarily attributable to its words. If this capital murder is especially heinous, atrocious or cruel, they all are. See Johnson v. State, 477 So.2d 196, 217 (Miss. 1985).
I dissent from the Court's rejection of Lockett's claim that he was entitled to a directed verdict as a matter of law on the matter of whether the capital murder of John Calhoun was especially heinous, atrocious and cruel. As I stated in my separate concurring opinion in Jones v. State, 517 So.2d 1295 (Miss. 1987):
[W]here the victim died of gunshot wounds, or any other means causing relatively instant death, and where there is no evidence of any barbarity, torture or wanton infliction of pain, or a lingering mental or physical agony, the trial judge should hold as a matter of law that the prosecution is not entitled to have the jury consider, as a possible circumstance of aggravation, that the capital murder may have been "especially heinous, atrocious or cruel."
Jones, 517 So.2d at 1309-1310 (Robertson, J., Concurring). Similarly, I suggest in Jones that in cases where the prosecution's evidence meets this threshold test, the court should provide the jury with an instruction that "the jury must find beyond a reasonable doubt that the killing possessed some quality of barbarity, torture, etc." before such a finding can be made. See Wiley v. State, 484 So.2d 339, 356-63 (Miss. 1986) (Robertson, J., and Dan Lee, Sullivan, JJ., Concurring); Edwards v. State, 441 So.2d 84, 94-96 (Miss. 1983) (Prather, J., Dissenting, joined by Patterson, C.J., Hawkins and Robertson, JJ.).
Applying the aforementioned analysis in the instant case, it appears that the questioned instruction should not have been given as a matter of law. Rather, as a matter of law, the jury should on these facts have never been allowed to consider the "especially heinous, atrocious and cruel" aggravating circumstances.

IV.
Lockett urges that the simultaneous submission of the armed robbery and pecuniary gain aggravating circumstances constituted impermissible stacking, a point I have also addressed in Jones and Wiley.
Allowing the submission to the jury of the aggravating circumstance that the capital offense was committed while the defendant was engaged in the commission of any robbery, and also allowing the aggravating circumstance that the capital offense was committed for pecuniary gain authorizes the finding of two aggravating *1346 circumstances predicated upon the same factual occurrence. See Jones, 517 So.2d at 1304 (Robertson, J., Concurring); Wiley, 484 So.2d at 358 (Robertson, J., Concurring). For the reasons heretofore stated, I dissent from the majority's treatment of this issue. See Part XV, Majority Opinion, p. 1337.

V.
Except as stated above, I concur with the majority opinion. The net effect, however, of the views I express above is that I would reverse Lockett's capital murder conviction and remand for a new trial. In the alternative, I would reverse and remand for a new sentencing hearing.
PRATHER and ANDERSON, JJ., join in this opinion.
NOTES
[1] Lockett's conviction of the capital murder of Mrs. Calhoun is considered in Case NO. DP-67, 517 So.2d 1346, also decided this day.
[2] When Judge Brown arrived on the scene, he gave Officer Craft a warrant for marijuana. Officer Craft indicated to Judge Brown that he needed a warrant for stolen goods, not marijuana, and gave the marijuana warrant back to Brown. Brown then issued a warrant for stolen property (guns). Judge Brown testified that he issued the gun warrant to the officers. Indeed, the return on the gun warrant clearly indicates that it was served on Yancey.
[3] In so doing, the State urges that the trial judge stands as the sole fact finder on whether the warrant was adequate and served according to law. Pool v. State, 483 So.2d 331, 334 (Miss. 1986). Accordingly, the State contends that the trial court's ruling on conflicting evidence regarding the warrant is entitled to substantial deference by this Court. See Gavin v. State, 473 So.2d 952, 955 (Miss. 1985); Hall v. State, 427 So.2d 957, 960 (Miss. 1983); see also Neal v. State, 451 So.2d 743, 753 (Miss. 1984); Watts v. State, 492 So.2d 1281, 1289 (Miss. 1986).
[4] See Alexander v. State, 503 So.2d 235, 239 (Miss. 1987); Seales v. State, 495 So.2d 475, 478 (Miss. 1986); Drane v. State, 493 So.2d 294, 298-99 (Miss. 1986); Stringer v. State, 491 So.2d 837, 841-42 (Miss. 1986) (Robertson, J., concurring); Harper v. State, 485 So.2d 1064, 1065 (Miss. 1986); Garvis v. State, 483 So.2d 312, 314 (Miss. 1986); Jones v. State, 481 So.2d 798, 800 (Miss. 1985); Walker v. State, 473 So.2d 435, 438 (Miss. 1985); Breckenridge v. State, 472 So.2d 373, 376 (Miss. 1985); McCommon, 467 So.2d at 941; Hester v. State, 463 So.2d 1087, 1090 (Miss. 1985).
[5] Lockett alleges that this question asked by the prosecutor constitutes a "comment proscribing mercy" in violation of Spivey v. Zant, 661 F.2d 464 (5th Cir.1981), cert. den. 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). In that case, the Court did not even address the issue of prejudicial prosecutorial comments during the sentencing phase due to resolution of the case on another issue. See Spivey, 661 F.2d at 467 n. 1.
[6] Lockett urges that these questions violate his rights under United States v. Spock, 416 F.2d 165, 182 (1st Cir.1969). Apparently, Lockett refers to the court's statement in that case that a criminal defendant is to be offered the full protection of a jury unfettered, directly or indirectly. Spock, 416 F.2d at 182. Nothing in the record indicates Lockett was not afforded such a jury.
[7] Lockett argues that the United States Supreme Court decided whether this statement alone violates the Federal Constitution in California v. Brown, ___ U.S. ___, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). However, Lockett misconstrues the issue in Brown. The Court there determined whether it was error for a court to explicitly instruct the jury that it could not consider sympathy or whether such an instruction can be cured by remaining instructions clearly setting out various sentencing options.